**Susan K. MOFFETT (formerly Susan K. Partin), Plaintiff,**

v.

**GENE B. GLICK COMPANY, INC.; Harry Hall; and Joseph Mickilini, Defendants.**

**Civ. No. F 84–250.**

United States District Court, N.D. Indiana, Fort Wayne Division.

Nov. 30, 1984.

Ernest M. Beal, Jr., Parrish, Knight, Jackson & Beal, Fort Wayne, Ind., for plaintiff.

James F. Beatty, James W. Beatty, Virginia Dill McCarty Landman & Beatty, Indianapolis, Ind., Richard J. Thonert, Fort Wayne, Ind., for defendants.

## ORDER

WILLIAM C. LEE, District Judge.

This matter is before the court on defendants' Motion to Dismiss filed September 20, 1984. For the reasons set forth below, the motion will be granted in part and denied in part.

Plaintiff Moffett has filed a complaint under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e–2(a) and § 2000e–3(a), under 42 U.S.C. § 1981, and under four Indiana common law tort theories for actions taken by the defendants with respect to Moffett's employment with defendant Gene B. Glick Co., Inc. ("Glick"). The defendants have responded by filing a Motion to Dismiss as to the § 1981 and Indiana common law counts.

In deciding a motion to dismiss for failure to state a claim, this court must take the well-pleaded factual allegations of plaintiff's complaint as true. *Ashbrook v. Hoffman*, 617 F.2d 474 (7th Cir.1980). A complaint should not be dismissed for failure to state a claim unless it appears beyond a doubt that the plaintiff can prove no set of facts in support of the claim which would entitle plaintiff to relief. *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957); *Jafree v. Barker*, 689 F.2d 640, 643 (7th Cir.1982); *Park Electric Co. v. Local 701*, 540 F.Supp. 779, 781 (N.D.Ill.1982). Further, this court must consider the complaint in the light most favorable to the plaintiff and must resolve every reasonable doubt in favor of the claimant. *Henry C. Beck Co. v. Fort Wayne Structural Steel*, 701 F.2d 1221 (7th Cir.1983).

Under these principles, the relevant facts of this case appear to be as follows. Plaintiff Moffett is a Caucasian female who was employed as a manager by defendant Glick at Glick's Cambridge Square, Phase I, apartment complex from June, 1982 until August 15, 1983. In November, 1982, defendants Hall and Mickilini, who worked as maintenance managers at the Cambridge Square, Phase I, complex, learned of Moffett's personal relationship with a black man, and began to make racially discriminatory comments, derogatory remarks, threats of physical or personal harm, and engaged in other forms of harassment. From December, 1982 until May, 1983, plaintiff reported this conduct to her superiors, but no meaningful action was taken by anyone at Glick to curtail the harassment. A letter from Jack Kline, an executive officer of Glick, to Moffett's supervisor indicated that "I am not sure we can keep our staff from saying things. I am not sure that we could fire them on the basis of their remarks."

Within the statutorily-prescribed time limits, Moffett filed employment discrimination charges with the Equal Employment Opportunity Commission ("EEOC") and the Fort Wayne Metropolitan Human Relations

Commission ("FWMHRC"). The FWMHRC determined there was "probable cause" to believe that Moffett's charges were true, and the EEOC issued a Notice of Right to Sue. This action was timely filed after the completion of administrative proceedings.

The complaint alleges six counts: (1) a Title VII claim against Glick; (2) a claim under 42 U.S.C. § 1981 against all defendants; (3) invasion of privacy; (4) intentional or negligent infliction of emotional distress; (5) a claim of breach of contract and/or fraud against Glick for retaliatory discharge; and (6) a claim of intentional interference with contract or advantageous business relations against Hall and Mickilini. Moffett claims damages "in an amount and character to be proven at trial," and seeks "all appropriate relief, including an award of costs and attorneys fees, that [the court] deems just and proper."

The defendants have responded by filing their motion to dismiss. The motion does not challenge the Title VII claim against Glick in Count One. Rather, the motion attacks the sufficiency of the rest of the complaint by raising the following arguments: (1) pleading deficiencies mandate dismissal; (2) Hall and Mickilini cannot be liable under § 1981, and therefore should be dismissed from Count Two; (3) the allegations of Count Three do not fall within the parameters of the Indiana common law tort of invasion of privacy; (4) failure to allege an "impact" mandates dismissal of the intentional/negligent infliction of emotional distress claim of Count Four; (5) the at will nature of Moffett's employment contract forecloses a breach of contract claim, and the failure to allege fraud particularly requires dismissal of Count Five; and (6) Hall and Mickilini did not perform any acts amounting to an interference for purposes of Count Six. The court will analyze these arguments in turn.

### Pleading Deficiencies

Defendants allege three pleading deficiencies. First, they claim that the "tacking on" of state common law claims without alleging their essential elements makes Counts Three through Six "makeweight" claims that should be dismissed. Second, defendants challenge plaintiff's use of the phrase "and/or" in several places of the complaint because it does not "fairly inform Defendants of the specific nature of the case." Lastly, defendants challenge plaintiff's damage claim and prayer for relief, claiming that the request for "all appropriate relief" fails to meet Federal Rule of Civil Procedure 8(a)(3)'s requirement of a "demand for judgment for the relief to which [the claimant] deems himself entitled." The court finds none of these arguments persuasive.

■■■ Defendants' assertion that the pendant state claims are "makeweight" misconstrues the pleading requirements under the Federal Rules. Rule 8(a)(2) requires "a short and plain statement of the claim showing that the pleader is entitled to relief." The statement need only be enough to give the defendant "fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Conley v. Gibson*, 355 U.S. 45, 47, 78 S.Ct. 99, 103, 2 L.Ed.2d 80 (1957). Under this "notice pleading" framework, Moffett has clearly alleged sufficient facts and the theory under which she seeks relief in all six counts. The defendants certainly have "fair notice" —their brief examines each theory of recovery and how the facts alleged in the complaint relate to each theory.

Nor do the Federal Rules require that each state common law claim be pleaded according to state law rules. The adequacy of a pleading is governed by federal law, not state pleading rules. *Colton v. Swain*, 527 F.2d 296, 304 (7th Cir.1975); *Kelly v. Stratton*, 552 F.Supp. 641, 648–49 (N.D.Ill. 1982); Wright and Miller, *Federal Practice and Procedure* § 1204 (1969). Thus, to the extent that defendants' argument can be characterized as alleging that Moffett fails to allege all of the elements of the common law torts under Indiana law, it must be rejected. Plaintiff's counts clearly give notice of the nature of the claims against the defendants. Perhaps the best evidence of

this is defendants' memorandum in support of the motion to dismiss; that brief analyzes the legal theory of each count, and presents extensive argument on the sufficiency of each theory.

■ For precisely the same reason, defendants' arguments against the use of "and/or" in plaintiff's pleadings does not violate Rule 8(a). The defendants have been clearly apprised of the nature of the claims and facts alleged, and have stated their legal positions on each issue. The court finds no damage to defendants' position by this form of pleading.

■ Lastly, Moffett's prayer for relief, although admittedly general, is sufficient to meet the pleading requirements of the federal rules. Rule 8(a)(3) requires that a complaint contain "a demand for judgment for the relief to which [the pleader] deems himself entitled." Here, ¶ 23 of Moffett's complaint alleges that she was damaged "in an amount and character to be proven at trial." Given the nature of Moffett's allegations, the court characterizes ¶ 23 as asserting a claim for money damages, with the ultimate prayer for relief ("Plaintiff prays that this court grant her all appropriate relief") being a request for a judgment awarding monetary relief. Viewed in this light, the complaint satisfies the mandate of Rule 8(a)(3).

Defendants cite two cases to support their argument that general requests for relief violated Rule 8(a)(3), but neither case supports the argument. In *RKO-Stanley Warner Theatres, Inc. v. Mellon National Bank & Trust Co.*, 436 F.2d 1297 (3d Cir. 1970), the court affirmed the dismissal of a claim against one defendant on grounds of Rule 8(a)(3), but the court's discussion about the inability to conceive how the defendant could be liable and what kind of relief against the defendant would help the plaintiff indicates that the complaint's failure to suggest appropriate relief made the general prayer for relief ineffective. Here, the complaint clearly contemplates monetary damages as relief. In *National Indian Youth Council v. Morton*, 363 F.Supp. 475 (W.D.Okla.1973), the damage claim was defective not because of its generality *per se*, but rather because its generality forced the court to assume that each unnamed plaintiff suffered more than $10,000 in damages for being expelled from school. The court was understandably reluctant to make that assumption. However, Moffett's complaint contains allegations of monetary damages (¶ 23) which require no such sweeping assumptions. Thus, both cases are distinguishable, and do not contradict the conclusion that Moffett's damage allegations and prayer for relief meet the requirements of the federal rules.

Overall, defendants' arguments for dismissal on the grounds of pleading defects fail.

### Count Two—42 U.S.C. § 1981

Moffett has filed a claim of racial discrimination under 42 U.S.C. § 1981, alleging that Hall and Mickilini's harassment via racial comments, and Glick's tacit approval of the harassment, violated § 1981's prohibition against racial discrimination in employment. Defendants have moved to have this count dismissed as against Hall and Mickilini because neither defendant "was at least a supervisor" of the plaintiff. The premise behind the argument is that a co-employee of a § 1981 plaintiff who is not a supervisor of the plaintiff, or an officer, director, or agent of the employer, cannot be individually liable under § 1981.

Section 1981 provides:

All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.

This section "relates primarily to racial discrimination in the making and enforcement of contracts," and "affords a federal remedy against discrimination in private employ-

ment on the basis of race." *Johnson v. Railway Express Agency, Inc.*, 421 U.S. 454, 459–60, 95 S.Ct. 1716, 1720, 44 L.Ed.2d 295 (1975).

■ As defendants readily concede, an individual can be liable for a violation of a plaintiff's § 1981 rights. *Tillman v. Wheaton-Haven Recreation Assoc., Inc.*, 517 F.2d 1141, 1146 (4th Cir.1975); *Faraca v. Clements*, 506 F.2d 956, 959 (5th Cir.), *cert. denied*, 422 U.S. 1006, 95 S.Ct. 2627, 45 L.Ed.2d 669 (1975); *Gladden v. Berry*, 558 F.Supp. 676, 678 (D.D.C.1983); *Jeter v. Boswell*, 554 F.Supp. 946, 951–53 (N.D.W. Va.1983). The descriptions of the necessary elements of individual liability vary, but all point to a personal involvement in the discrimination against the plaintiff. The Fourth Circuit, for example, held that corporate "directors become personally liable when they intentionally cause a corporation to infringe the rights secured by ... [§] 1981...." *Tillman*, 517 F.2d at 1146. The *Gladden* court held that allegations of "personally" violating a plaintiff's civil rights states a valid claim against an individual under § 1981. *Gladden*, 558 F.Supp. at 678. The Northern District of Illinois, in *Manuel v. International Harvester Co.*, 502 F.Supp. 45 (N.D.Ill.1980), held that corporate directors or officers could be personally liable under § 1981 if they "authorize, direct, or participate in the alleged discriminatory conduct." *Id.* at 50. And in *Coley v. M & M Mars, Inc.*, 461 F.Supp. 1073 (M.D.Ga.1978), the court ruled that individual defendants could be liable under § 1981 for "discriminatory interference with plaintiff's contractual relationship" with the employer. *Id.* at 1076.

■ Defendants argue that only corporate superiors (officers, directors, or supervisors) can be individually liable under § 1981. The argument is based on the negative implication which arises from the fact that all of the reported cases of individual liability under § 1981 involved corporate superiors: because only superiors have been held liable in past cases, then corporate co-equal or inferior employees (like Hall and Mickilini) cannot be held individually liable now.

The court refuses to adopt this approach to individual liability. The cases cited above make it clear that individuals can be liable if they "intentionally cause a corporation to infringe" on § 1981 rights, *Tillman*, 507 F.2d at 1146, if they "authorize, direct, or participate in the alleged discriminatory conduct," *Manuel*, 502 F.Supp. at 50, or if they engage in "discriminatory interference with plaintiff's contractual relationship" with the employer. *Coley*, 461 F.Supp. at 1076. While corporate officers, directors and supervisors have more corporate responsibility and thus more potential to engage in prohibited discriminatory conduct, they are certainly not the only individuals who can "participate in discriminatory conduct" or "discriminatorily interfere with an employee's contractual relationship."

■ Taking the allegations of the complaint as true, Hall and Mickilini began making racial comments, derogatory remarks and threats of physical harm in November, 1982. Such harassment continued until Moffett's termination in August, 1983. When Moffett reported the harassment to her superiors, a series of meetings with Glick officials commenced, and resulted in a written reprimand for non-professionalism, a threat of dismissal if Mr. Moffett (plaintiff's husband) came to the rental office, and increasingly critical reviews of Moffett's work. *See* complaint, Exhibits A and B. While all of these actions were taken by Glick officials, it is fair to say that Hall's and Mickilini's continuing harassment instigated the internal administrative process which ultimately resulted in Moffett's termination. This may, depending upon the evidence presented in the case, provide some basis for showing that Hall and Mickilini played some causative role in Moffett's termination. For purposes of the motion to dismiss, defendants have failed to show that plaintiff can prove no set of facts entitling her to relief.

Under the "discriminatorily interfere with plaintiff's employment contract" standard set out in the *Coley* case, Moffett may

also be able to show some kind of entitlement to relief. The complaint alleges that the harassment was continuous. The exhibits to the complaint show that after the reprimand for non-professionalism in February, 1983, Moffett's work environment became increasingly more difficult to tolerate, as audits were conducted of her work on a much more frequent basis, Moffett was blamed for mistakes of others, and she became alienated from the office staff. If plaintiff were to show that these office problems were a result of Hall's and Mickilini's harassment, then defendants' actions may constitute the "discriminatory interference" prohibited in *Coley.*

On balance, then, defendants fail to establish the propriety of dismissing Count Two as to Hall and Mickilini. Therefore, the motion to dismiss Count Two will be denied.

### Count Three—Invasion of Privacy

Defendants move to dismiss Count Three as against all three defendants by arguing that the Indiana common law tort of invasion of privacy is limited to cases involving the publication of information concerning the complainant's private activities. Finding no allegation of "publication" in the complaint, the defendants argue that the complaint is therefore fatally defective.

Both plaintiff and defendants agree that the Indiana tort of invasion of privacy is defined as follows:

The unwarranted appropriation or exploitation of one's personality, the publicizing of one's private affairs with which the public has no legitimate concern, or the wrongful intrusion into one's private activities, in such a manner as to outrage or cause mental suffering, shame, or humiliation to a person of ordinary sensibility.

*Continental Optical Co. v. Reed,* 119 Ind. App. 643, 86 N.E.2d 306, 308 (1949). As the plaintiff correctly points out, defendants' characterization of the tort as involving publication is only partially correct because the "publicizing of one's private af-

fairs" is only one of the three forms of invasion recognized in the definition.

The aspect of the *Continental Optical* definition which plaintiff claims applies here is the "wrongful intrusion into one's private activities." No Indiana case law defines the parameters of this aspect of the tort. However, the Restatement of Torts, Second, in the comments to § 652B (which recognizes the tort of intrusion upon seclusion or privacy), recognizes that this type of tort "does not depend upon any publicity given to the person whose interest is invaded or to his affairs." Comment a. The tort consists "solely of an intentional interference with his interest in solitude or seclusion, either as to his person or as to his private affairs or concerns, of a kind that would be highly offensive to a reasonable man." *Id.*

The shouting of racial comments, threats of physical harm to the plaintiff and her husband, as well as threats of damage to Mr. Moffett's automobile and other property could certainly constitute intentional interference with plaintiff's personal and private affairs. Because the comments and harassment were based on Moffett's race and her personal relationship with a man of a different race, these intrusions are even more serious and grievous, and as such can be viewed as highly offensive to a reasonable man. Therefore, the plaintiff has alleged sufficient facts in Count Three to withstand the motion to dismiss, and thus the motion will be denied as to Count Three.

### Count Four—Infliction of Emotional Distress

In Count Four, Moffett claims that the defendants' actions constitute either intentional or negligent infliction of emotional distress. Defendants respond by arguing that there was no physical impact to Moffett, and because her case does not involve any of the exceptions to the "impact rule," this count must fail.

All parties agree that Indiana adheres to the general rule that damages for emotional distress are recoverable only when ac-

companied by and resulting from physical injury. *Little v. Williamson,* 441 N.E.2d 974, 975 (Ind.App.1982); *Baker v. American States Ins. Co.,* 428 N.E.2d 1342, 1349 (Ind.App.1981); *Charlie Stuart Oldsmobile, Inc. v. Smith,* 171 Ind.App. 315, 326, 357 N.E.2d 247, 253 (1976), *modified on other grounds,* 175 Ind.App. 1, 369 N.E.2d 947 (1977). This "impact rule" applies to both intentional and negligent infliction of emotional distress. *Little,* 441 N.E.2d at 975.

However, an exception to the impact rule exists, and both briefs here recognize it. This exception arises when there are

> certain tort actions involving the invasion of a legal right which by its very nature is likely to provoke an emotional disturbance. False imprisonment and assault actions are examples of instances in which a disagreeable emotional experience would normally be expected to be inextricably intertwined with the nature of the deliberate wrong committed, thereby lending credence to a claim for mental disturbance. The conduct of the defendant in such circumstances is characterized as being willful, callous, or malicious, which may produce a variety of reactions such as fright, shock, humiliation, insult, vexation, inconvenience, worry, or apprehension.

*Charlie Stuart Oldsmobile,* 171 Ind.App. at 327, 357 N.E.2d at 254.

■ Here, Hall and Mickilini made threats of physical violence to Moffett. If those threats were accompanied by overt acts, they may constitute an assault on Moffett, which would then clearly fall into the *Charlie Stuart Oldsmobile* assault exception to the impact rule. Thus, even though no physical impact is alleged or inferred from the complaint, it is possible that Hall and Mickilini could be liable for intentional infliction of emotional distress.

As for Glick, the alleged toleration and tacit approval of Hall's and Mickilini's harassment may be sufficient to make Glick liable for the assault (and thus the infliction of emotional distress) under principles of respondeat superior. Generally, the doctrine of respondeat superior imposes liability upon a master for the torts of his servants committed while acting within the scope of the servants' employment. *Trinity Lutheran Church, Inc. v. Miller,* 451 N.E.2d 1099, 1102 (Ind.App.1983); *State v. Gibbs,* 166 Ind.App. 387, 336 N.E.2d 703 (1975). Here, Hall and Mickilini may have committed an assault and intentional infliction of emotional distress within the scope of their employment by Glick, thus making Glick vicariously liable for both torts. Given this interpretation, the plaintiff has produced a set of facts which would entitle her to relief, and thus the motion to dismiss Count Four will be denied.

### Count Five—Breach of Contract and Fraud

Count Five of Moffett's complaint alleges that Glick breached its employment contract with Moffett and/or practiced a fraud upon her by discharging her for filing discrimination charges against Glick. Glick counters by arguing that, because the contract had no stated term of duration, it was an "at will" contract which Glick could terminate at any time for any reason.

■ Moffett does not allege any employment contract, nor any specific term of duration of her employment contract with Glick. In Indiana, if the tenure of service cannot be determined from the terms of the employment contract, then the contract is considered to be one at will, and may be terminated at any time at the election of either party. *Pepsi-Cola General Bottlers, Inc. v. Woods,* 440 N.E.2d 696, 697 (Ind.App.1982); *Campbell v. Eli Lilly and Co.,* 413 N.E.2d 1054 (Ind.App.1980). Moffett argues that an exception to this general rule of the unenforceability of at will contracts exists for cases involving retaliatory discharge.

The *Pepsi-Cola General Bottlers* case, cited above and quoted extensively by defendants, recognizes that exceptions to the at will doctrine exist "where the employee is discharged solely for exercising a right conferred on him by a statute, constitution,

or other positive law." *Id.*, 440 N.E.2d at 697. The court cites *Frampton v. Central Indiana Gas Co.*, 260 Ind. 249, 297 N.E.2d 425 (1973), in support. *Frampton* involved an at will employee who alleged she was discharged for filing a workmen's compensation claim against her former employer. The *Frampton* court examined the public policy concerns behind the Indiana workmen's compensation statute and found that it bestows a right of compensation on the employee and a duty to compensate on the employer. The *Frampton* court concluded that "under ordinary circumstances, an employee at will may be discharged without cause. However, when an employee is discharged solely for exercising a statutorily conferred right an exception to the general rule must be recognized." *Id.* at 253, 297 N.E.2d at 429.

Here, Moffett filed a discrimination charge with the Fort Wayne Metropolitan Human Relations Commission under the provisions of Title VII of the Civil Rights Act of 1964. As Glick's employee, Moffett had a right to file a discrimination charge against Glick. 42 U.S.C. § 2000e–5(b). Following the *Frampton* rationale, Glick had a legal duty to avoid engaging in unlawful employment practices like discharging Moffett in retaliation for filing a discrimination charge. 42 U.S.C. § 2000e–3(a). Thus, Moffett had a statutorily conferred right and Glick had a concomitant duty under Title VII.

Defendant Glick argues that the *Frampton* exception does not apply here because § 2000e–3 and the Indiana Civil Rights laws already provide a remedy for a retaliatory discharge. However, although these statutory remedies may exist, they do not abrogate the power of the common law to fashion remedies for violations of a plaintiff's rights. Nothing indicates that these statutes were intended to be exclusive remedies, and this court refuses to so read them. Further, the court is not convinced that a breach of contract action is very similar to either § 2000e–3 or the Indiana statutory provisions. While all three remedies may focus on the same act—the retaliatory discharge—they each involve their own elements and theories of liability. Moffett should be entitled to plead several theories of liability as part of her case.

Thus, Moffett has alleged sufficient facts of a retaliatory discharge to avoid the at will doctrine of employment contracts, and thus presents a plausible claim of breach of contract. As such, the breach of contract aspect of Count Five will withstand the motion to dismiss.

As to the allegation of Count Five that Glick worked a fraud upon the plaintiff (by telling her that she was discharged for poor work product when in fact it was in retaliation for filing charges against Glick), it appears that plaintiff has failed to plead the circumstances constituting the fraud with sufficient particularity. Fed.R. Civ.P. 9(b). In fact, plaintiff's explanation of how Glick's termination of Moffett constituted fraud was only stated in the memorandum in opposition to the motion to dismiss. Despite the liberal principles of notice pleading, the rule 9(b) requirements concerning allegations of fraud require more than what plaintiff has pleaded.

Further, as defendants correctly point out, one of the elements of Indiana common law fraud is a detrimental reliance upon the material misrepresentation of the defendant. *Carrell v. Ellingwood*, 423 N.E.2d 630, 635 (Ind.App.1981). Even taking all inferences from the facts in favor of the plaintiff, it is impossible for the court to perceive what detriment Moffett suffered. The alleged misrepresentation goes to the reason for Moffett's termination. Yet no matter which reason was actually expressed to Moffett, the result was the same: she was fired. Apparently, the alleged statement that she was terminated for "poor work" did not mislead her; within two days of her discharge, she filed charges with the FWMHRC alleging retaliatory discharge. Complaint, Exhibit B. Because the filing was certainly timely, her legal rights were not compromised in any way. Thus, there is no perceptible detriment caused by the alleged misrepresentation, and so a claim of fraud would fail.

Therefore, to the extent that Count Five is viewed as a breach of contract claim, the motion to dismiss fails. However, to the extent that the count is a claim of fraud, the motion will be granted.

### Count Six—Interference with Contract

The last count of the complaint alleges that Hall and Mickilini interfered with Moffett's contractual and/or advantageous business relationship with Glick. The defendants argue, first, that interference with contract requires the existence of an enforceable contract, which is absent in this at will employment contract; and second, that interference with advantageous business relations requires the performance of an illegal act, which Hall and Mickilini did not perform.

The Indiana courts have made it clear that an action in tort for interference with a contractual relationship presupposes the existence of a valid and enforceable contract. *Stanley v. Kelley*, 422 N.E.2d 663, 667 (Ind.App.1981); *Helvey v. O'Neill*, 153 Ind.App. 635, 288 N.E.2d 553 (1972); *Grimm v. Baumgart*, 121 Ind.App. 626, 96 N.E.2d 915 (1951). The *Stanley* court specifically held that an at will employment contract is "unenforceable with respect to that which remains executory," so that "such a contract, terminable at will, cannot form the basis of an action for interference with a contractual relationship." *Stanley*, 422 N.E.2d at 667. As was discussed above in relation to Count Five, Moffett's contract with Glick was an at will contract. Although an exception to the at will doctrine existed for retaliatory discharge, thus saving Count Five from dismissal, that exception does not save the interference with contract aspect of Count Six. *Stanley* makes it quite clear that Indiana does not recognize an interference with contract claim for an employee in Moffett's position, and therefore the motion to dismiss will be granted as to this aspect of Count Six.

As to the second half of Count Six, defendants concede that Indiana recognizes a tort of interference with business relationships. *See Fort Wayne Cleaners and Dyers Ass'n v. Price*, 127 Ind.App. 13, 137 N.E.2d 738, 742 (1956). However, defendants claim that the defendant must act illegally in order to be liable, citing *Spier v. Home Ins. Co.*, 404 F.2d 896, 898 (7th Cir. 1968). Assuming that to be true, the motion to dismiss must fail because Moffett has pleaded several illegal acts by Hall and Mickilini: violation of 42 U.S.C. § 1981, invasion of privacy, and infliction of emotional distress. As shown earlier in this order, these claims have withstood the motion to dismiss, and therefore offer a plausible basis for asserting that Hall and Mickilini committed illegal acts constituting an interference with Moffett's business relationship with Glick.

Thus, the motion to dismiss will be granted to the extent that Count Six states an interference with contract claim, but will be denied for the interference with business relationship aspect of Count Six.

For the above stated reasons, the motion to dismiss is hereby DENIED as to all counts of the complaint with the exception of the allegations of fraud in Count Five and of interference with contract in Count Six. The motion to dismiss is hereby GRANTED for the fraud claim of Count Five and the interference with contract claim of Count Six.