**Caroline GARUS, Plaintiff,**

v.

**ROSE ACRE FARMS, INC., John Head, Louis Ameglio, Joshua Russell, Robert Head, and Julio Batz, Defendants.**

Civ. No. H 93–154.

United States District Court,
N.D. Indiana,
Hammond Division.

Dec. 16, 1993.

Terry R. Boesch, Merrillville, IN, for plaintiff.

Donald W. Shelmon, Rensselaer, IN, Loren D. Bueter, Bloomington, IN, Corinne R. Finnerty, North Vernon, IN, Lucille Uttermohlen, Monticello, IN, for defendants.

## *ORDER*

MOODY, District Judge.

This matter comes before the court upon the defendants' July 9, 1993 motion to dismiss Caroline Garus' action against them.[1] The defendants argue two bases for dismissal: (1) improper venue, pursuant to 28 U.S.C. § 1406(a); and, (2) failure to state a claim, pursuant to FED.R.CIV.P. 12(b)(6). As an alternative to dismissal, were the court to find venue improper, they ask the court to transfer the case to the Lafayette sitting of the Hammond division. Because venue is proper in Hammond, defendants' section § 1406(a) motion is **DENIED.** Defendants' Rule 12(b)(6) motion is also **DENIED.**

Garus' complaint alleges three counts. Federal jurisdiction is premised on the first of these, a claim of sexual harassment and discrimination brought under Title VII of the Civil Rights Act of 1991, 42 U.S.C. § 2000e–5. Garus also alleges common-law counts of intentional infliction of emotional distress and invasion of privacy arising out of the same occurrences underlying her Title VII claim. Each of these counts is alleged against both Rose Acre Farms, Garus' employer, and each of the individual defendants.

Rose Acre Farms is a company engaged in poultry and egg production in Newton, White, and Pulaski counties in Indiana. Garus was an employee of Rose Acre Farms. She alleges that while employed there she was subject to repeated sexual harassment and discrimination by her co-workers and supervisors, the named defendants. She claims that Rose Acre Farms "condoned and ratified" this misconduct. She further alleges that in retaliation for her reactions to that misconduct, she was wrongfully demoted. Consequently, she brought the present suit.

---

1. Defendant Julio Batz is not named among the parties moving for dismissal. No return of service has been made as to defendant Batz; however, attorney Donald Shelmon, who prepared the motion to dismiss under consideration here, has made an appearance on Batz' behalf. Accordingly, the court assumes defendant Batz has received service and is represented in this motion.

Defendants, as noted, have moved to dismiss the action. The court takes up their arguments in turn.

## I. Section 1406(a) challenge to venue.

The defendants first argue that 28 U.S.C. § 1406(a) mandates that this action be either dismissed or transferred. Section 1406(a) requires that a district court "dismiss, or if it be in the interest of justice, transfer" a case *"laying venue in the wrong division or district."* 28 U.S.C. § 1406(a) (Emphasis added.) Section 1406(a) is inapposite in this case, however, because venue properly lays with this court.

Title VII, rather than the general venue provisions of chapter 28, governs venue determinations for actions brought under its authority. *See* 42 U.S.C. § 2000e–16(d) ("The provisions of section 2000e–5(f) through (k) of this title, as applicable, shall govern civil actions brought hereunder.") Title VII provides, in part, that a civil action under Title VII "may be brought *in any judicial district in the state* in which the unlawful employment practice is alleged to have been committed." 42 U.S.C. § 2000e–5(f)(3) (Emphasis added.)

There is case-law that suggests that this provision restricts venue to the district where the alleged misconduct occurred. *Thurmon v. Martin Marietta Data Systems,* for example, states that there are "four judicial districts where an employment discrimination action may be brought [under Title VII]: (1) *"where 'the unlawful employment practice is alleged to have been committed'"*; (2) where 'the plaintiff would have worked but for the alleged unlawful employment practice'; (3) where 'the employment records

relevant to such practice are maintained and administered'; and (4) where the employer 'has his principal office'...." 596 F.Supp. 367, 368 (M.D.Pa.1984) (quoting 42 U.S.C. § 2000e–5(f)(3)) (Emphasis added.) This reading, however, renders the statute's "in the state" language surplusage. The better construction is that "[v]enue is not limited to the *judicial district* in which the alleged unlawful acts occurred, but is appropriate [under Title VII] in any judicial district [located] in the *state* in which the alleged unlawful acts occurred." *See Aitkin v. Harcourt Brace Jovanovich,* 543 F.Supp. 987, 988 (W.D.N.Y.1982).

Thus, for Title VII venue purposes, Congress has determined that no distinction is to be drawn between districts in multi-district states based on the location of the district *vis-a-vis* the place where the alleged misconduct occurred: location within the same state as the alleged misconduct is sufficient. The court will not draw finer lines by creating such a distinction between courts sitting in different divisions within a district or, as here, sittings within a division.

The defendants' arguments might be more persuasive in a case governed by the general venue statute, which applies when venue requirements are not "otherwise provided by law." *See* 28 U.S.C. 1391(b). Likewise, the general rules for the Northern District of Indiana, which might otherwise place venue for this action in Lafayette, do not operate to do so in the face of Title VII's particularized venue provision.[2] Accordingly, venue is proper in Hammond and the defendants' motion to dismiss or transfer because of improper venue is denied.[3]

---

2. The General Information and Orders section of the Local Rules for the Northern District of Indiana divide the Hammond division between sittings in Hammond and in Lafayette:

> By order of the court a division of the business of the Hammond Division has been effected whereby the counties of Benton, Carroll, Jasper, Newton, Tippecanoe, Warren and White shall be within the venue of Lafayette; the counties of Lake and Porter shall be within the venue of Hammond.

The defendants point out that Newton and White are the only of the above counties in which alleged acts of misconduct occurred in this case.

3. Defendants state that "[t]he only conceivable reason why [Garus] chose this particular venue ... besides convenience for [Garus'] counsel, is that a former member of [Garus'] law firm is now [a] ... judge in [Hammond]." Of course, as is routine in such cases, the judge involved has recused himself from this case. The court condemns the suggestion that any advantage could be gained before it by those with whom any of its judges had worked or have known in the past.

## II. Rule 12(b)(6) motion to dismiss.

Defendants' Rule 12(b)(6) motion attacks the complaint on several fronts. First, it challenges whether Garus has sufficiently pleaded the basis for her Title VII claim. Second, it attacks her common-law claims. Defendant Rose Acre Farms argues further that the Indiana Workers' Compensation Act preempts any common law claims that might otherwise lie against it. All of the defendants challenge whether Garus alleges either intentional-infliction-of-emotional-distress or invasion-of-privacy claims on which relief could be granted under Indiana law. The court takes up each of these attacks.

### A. The Title VII claim.

■ Concerning Garus' Title VII claim, the defendants' do not argue that, taking Garus' allegations as true, she has failed as a matter of law to make out a Title VII claim; rather, they argue that Garus' complaint must be dismissed because it does not set out "specific facts concerning the conduct of which she complains" and is therefore fatally vague.

Garus pleads her case in confessedly conclusory language.
She alleges that she was:

- victim to "a continuous, repetitious, and degenerative cycle and pattern of sexual harassment and sexual discrimination," by her co-workers and supervisors (the defendants), and

- "wrongfully transferred and demoted ... based upon discriminatory motives arising in part or in whole on the sexual harassment of the plaintiff ...; said transfer being in retaliation against the plaintiff."

The complaint further alleges that Rose Acre Farms "was aware or should have been aware" of its employees' misconduct towards Garus and that the company "condoned and ratified" that misconduct. Although the evidentiary bases for these conclusions remains cloaked at this stage, these allegations are sufficient to pass muster under the liberal

notice pleading requirements set out in the federal rules of civil procedure.

■ A motion challenging the sufficiency of a complaint under Rule 12(b)(6) must be read in the context of FED.R.CIV.P. 8(a), which sets out the general rules for pleading. Rule 8(a) mandates that the plaintiff make, *inter alia,* "a short and plain statement of the claim." This requirement "is designed to permit the defendant to have a fair understanding of what the plaintiff is complaining about and to know whether there is a legal basis for recovery." *Ricciuti v. N.Y.C. Transit Authority,* 941 F.2d 119, 123 (2d Cir. 1991). The rule allows "litigants [to] plead generally and discover the precise factual basis for their claim through equally liberal pretrial discovery procedures." *Morrison v. City of Baton Rouge,* 761 F.2d 242, 244 (5th Cir.1985). Those same liberal discovery procedures are available to opposing parties seeking to discover the factual basis for claims against them.

In support of their position, the defendants cite to several cases that hold that actions brought under Title VII must be pleaded with heightened particularity. See *Simpson v. Welch,* 900 F.2d 33, 35 (4th Cir.1990) (finding plaintiff's complaint insufficient because it did not allege specific misconduct); *Sosa v. Hiraoka,* 714 F.Supp. 1100, 1107 (E.D.Cal. 1988) ("Claims asserted by plaintiffs under Title VII of the Civil Rights Act of 1964 must be specifically pled."), *rev'd* 920 F.2d 1451, 1460 (9th Cir.1990) ("We reject the district court's holding on the specificity of Sosa's pleading as ... unprecedented in our circuit's cases."); see also *Morrison,* 761 F.2d at 244 (stating Fifth Circuit requires specific facts be pleaded in civil rights actions under 42 U.S.C. § 1983). These cases do not square with current law.

The Seventh Circuit Court of Appeals recently restated its position that "[t]he federal rules, with the partial exception of Rule 9(b), do not require fact pleading." *Early v. Bankers Life & Cas. Co.,* 959 F.2d 75, 79 (7th Cir.1992).[4] Rule 9(b) requires that "[i]n all

---

4. In *Kunik v. Racine County,* a § 1983 action against a county government, the Seventh Circuit did examine Kunik's complaint "to determine

whether *the pleaded facts* could support relief." 946 F.2d 1574, 1579 (7th Cir.1991) (Emphasis added.) To the extent it suggests that § 1983

averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." The insertion of this rule suggests by negative implication that averment of other matters need not be stated with particularity. *See Leatherman v. Tarrant County Narcotics Unit,* —— U.S. ——, ——, 113 S.Ct. 1160, 1163, 122 L.Ed.2d 517 (1993) (declaring *"expressio unius est exclusio alterius,"* the Court reasoned that had the drafters of the Federal Rules intended that averments as to matters other than fraud or mistake be pleaded with greater particularity, the rule could, and would, have so provided).

■ The continued vitality of the cases cited by the defendants is severely undermined by the *Leatherman* decision. Although *Leatherman* concerned the narrow question of § 1983 complaints against municipal corporations, *id.* —— U.S. at ——, 113 S.Ct. at 1161, its reasoning in this regard applies equally to Title VII actions, such as the one here: had the rules foreseen heightened pleading requirements for such actions, they would have so provided—they did not. Accordingly, the court concludes that no heightened particularity is required in pleading Title VII claims.

The court therefore denies the defendants' motion to dismiss Garus' Title VII claim for failure to sufficiently state a claim. The complaint places the defendants sufficiently on notice to allow them to frame their answer in accordance with the requirements of Rule 8(b).[5] The evidentiary basis for those claims are properly the grist for discovery, subsequent motions (if any), and trial (if it comes to that).

### B. The common-law claims.

■ The defendants also move to dismiss Garus' pendent common-law claims. They raise several arguments, as outlined above.

In reviewing these arguments, the court bears in mind that a complaint should not be dismissed pursuant to Rule 12(b)(6) "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his [or her] claim which would entitle him [or her] to relief." *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957).

### 1. Exclusivity of the Indiana Workers' Compensation Act.

■ Rose Acre Farms argues that the Indiana Workers' Compensation Act ("the Act") provides Garus' sole remedy against it for the harms she alleges in her common-law claims. The complaint alone does not support this conclusion.

■ Whether common-law claims are precluded by the exclusivity provision of the Act turns on whether those claims allege intentional torts or negligence. For example, in *Fields v. Cummins Employees Federal Credit Union,* 540 N.E.2d 631 (Ind.App. 1989), the plaintiff alleged "sexual harassment, batteries, and intentional interference with her advantageous business relationship" against a co-worker, *id.* at 633; however, she alleged only knowledge and negligent retention against her employer, *id.* The court held that the Act precluded Fields' common-law action. *Id.* at 635–636. *Fields* has been cited by the Seventh Circuit as authority for the proposition that

> a claim under Indiana law against an employer for sexual harassment by a coworker of the plaintiff is within the exclusive jurisdiction of the workmen's compensation law, which provides an administrative remedy not litigable in federal court under either the pendent or diversity jurisdiction of the federal courts.

*Guess v. Bethlehem Steel Corp.,* 913 F.2d 463, 466 (7th Cir.1990) (citing *Fields,* 540

---

actions demand heightened particularity in pleading, *Kunik* is no longer authoritative. *See Leatherman v. Tarrant County Narcotics Unit,* —— U.S. ——, ——, 113 S.Ct. 1160, 1163, 122 L.Ed.2d 517 (1993) (rejecting heightened pleading requirements for § 1983 actions brought against municipal corporations).

5. Rule 8(b) provides, in relevant part:

A party shall state in short and plain terms the party's defenses to each claim asserted and shall admit or deny the averments upon which the adverse party relies. If a party is without knowledge or information sufficient to form a belief as to the truth of an averment, the party shall so state and this has the effect of a denial. FED.R.CIV.P. 8(b).

N.E.2d at 635–636). By contrast, in *Perry v. Stitzer Buick, GMC, Inc.*, 604 N.E.2d 613, 617 (Ind.App.1992), the court held that allegations of racially motivated intentional torts made against an employer under a *respondeat superior* theory were not precluded by the Act. The court relied, in part, on *National Can, Corp. v. Jovanovich*, 503 N.E.2d 1224, 1232 (Ind.App.1987), which recognized an "exception" to the exclusivity of the Act where an intentional tort was alleged against an employer.

Garus alleges that Rose Acre Farms "acting by and through its officers, servants, employees and supervisors" *intentionally* inflicted emotional distress on her and invaded her privacy. Thus, so far as the court can determine at this stage, Garus' complaint brings her allegations under the *Perry–Jovanovich* line of cases. Rose Acre Farms' motion is therefore denied. This does not, of course, immunize the surviving claim from later inquiries into whether the corporation in fact acted intentionally or simply negligently retained those who did.

### 2. The Intentional Infliction of Emotional Distress Claims.

All of the defendants challenge Garus' intentional-infliction-of-emotional-distress claim. The tort of intentional infliction of emotional distress, as such, was first recognized in Indiana in 1991. *Cullison v. Medley*, 570 N.E.2d 27, 31 (Ind.1991). Liability under the new tort arises when one's " 'extreme and outrageous conduct intentionally or recklessly causes severe emotional distress to another.' " *Id.* (quoting the RESTATEMENT (SECOND) OF TORTS § 46). The defendants argue that Garus' claim should be dismissed because it alleges neither conduct that meets Indiana's high standard for "extreme and outrageous conduct" nor a "host tort."

The first of these arguments is quickly disposed of: the court cannot conclude based solely upon the complaint that Garus, beyond a doubt, will be unable to prove any set of facts that would support a conclusion that the "sexual harassment and discrimination" she alleges was "extreme and outrageous." This is a question that must, at least, await discovery.

The court further rejects the defendants' argument that an allegation of intentional infliction of emotional distress must be accompanied by a "host tort." The significance of the *Cullison* decision lies precisely in the absence of a "host tort" requirement from its discussion of the new tort. *See id.*

Prior to *Cullison*, Indiana courts had long applied the general rule that damages for mental anguish were recoverable in a tort action "only when accompanied by and resulting from a physical injury." *Charlie Stuart Oldsmobile, Inc. v. Smith*, 357 N.E.2d 247, 253–54 (Ind.App.1976). That general rule was subject to an exception "in certain tort actions involving the invasion of a legal right which by its very nature is likely to provoke an emotional disturbance." *Id.* at 254. Nonetheless, mental suffering was considered "necessarily parasitic to the host cause of action." *Id.* at 253 (citing RESTATEMENT (SECOND) OF TORTS § 47, "Conduct Intended to Invade Other Interests But Causing Emotional Distress").

*Cullison* rejected this view of emotional distress as "necessarily parasitic" when it adopted the RESTATEMENT (SECOND) OF TORTS § 46, "Outrageous Conduct Causing Severe Emotional Distress." *See Cullison*, 570 N.E.2d at 31. Neither *Cullison* nor the Restatement suggest any requirement of a "host tort." Indeed, inclusion of such a requirement would have only maintained the status quo regarding claims of emotional distress in Indiana, and would have rendered meaningless the court's pronouncement that the tort it there recognized "ha[d] not been recognized in this state" before. *Cullison*, 570 N.E.2d at 31.

The defendants, in support of their position, rely primarily upon *Norris by Norris v. Board of Education*, 797 F.Supp. 1452 (S.D.Ind.1992). In that case, the court imported the "host tort" requirement discussed in *Charlie Stuart Oldsmobile*, and other pre-*Cullison* cases, into its analysis of an intentional-infliction-of-emotional-distress claim. *See id.* at 1461–62. The defendants do not cite, and the court has not found, any post-*Cullison* Indiana case law that does likewise. Accordingly, bound foremost by the Indiana

Supreme Court's interpretation of Indiana law, the court concludes that Garus need not plead nor prove a "host tort" in connection with her intentional infliction of emotional distress claim. *See Kutsugeras v. Avco Corp.*, 973 F.2d 1341, 1346 (7th Cir.1992) (" '[A] federal court must apply the state law as declared by the highest state court or otherwise by the intermediate appellate court of the state.' ") (citation omitted).

**3. The Invasion of Privacy Claims.**

 Finally, the defendants challenge the sufficiency of Garus' claim that they tortiously invaded her privacy. Indiana law recognizes four strains of invasion of privacy: appropriation, public disclosure of private facts, false light, and intrusion. *See Cullison*, 570 N.E.2d at 31. Garus has pleaded the last of these, alleging that in committing the alleged harassment and discrimination the defendants "intended to and did interfere with or intrude into the plaintiff's solitude or seclusion ... with such intrusion being highly offensive to both the plaintiff and to a reasonable person." Defendants contend that "the type of conduct alleged, *i.e.*, sexual discrimination and sexual harassment in the workplace" cannot constitute "intrusion" for the purposes of this tort.

The Indiana Supreme Court took up the matter of intrusion into privacy in *Cullison*, 570 N.E.2d at 31. It stated that "[w]hen the invasion of a plaintiff's right to privacy takes the form of intrusion, it consists of an intrusion upon the plaintiff's physical solitude or seclusion as by invading his home or conducting an illegal search." 570 N.E.2d at 31. The *Cullison* court concluded that Cullison's privacy was not invaded by the "harassment" in public places in that case. *See id.*

In this respect, however, *Cullison* may have presented a different case than the one here before the court. The "harassment" in *Cullison* involved one of the defendants "glaring" at Cullison "in a menacing manner while armed with a handgun at a restaurant" and standing near Cullison "while wearing a pistol and a holster approximately one foot from Cullison's face." *Id.* at 29. It is not clear whether more invasive harassing activity might constitute an invasion of privacy under Indiana law.

As the court has pointed out before, "[n]o Indiana case law defines the parameters of this aspect of the tort." *See Moffett v. Gene B. Glick Co., Inc.*, 604 F.Supp. 229, 236 (N.D.Ind.1984). The court has found no case law since *Moffett* that inclines it toward a different conclusion today. It notes, however, that there is authority for the position that "[e]ven in a public place ... there may be some matters about the plaintiff ... that are not exhibited to the public gaze; and there may still be invasion of privacy when there is intrusion upon these matters." RESTATEMENT (SECOND) OF TORTS § 652B comment c.

The Alabama Supreme Court, on certification from the Eleventh Circuit, relied on the RESTATEMENT (SECOND) OF TORTS § 652B to conclude that a male employer's "intrusive and coercive sexual demands" on a female employee were an " 'examination' into her 'private concerns,' " *i.e.*, her sexual proclivities, that was actionable as an invasion of privacy. *Phillips v. Smalley Maintenance Services*, 435 So.2d 705, 711 (Ala.1983). The court reasoned that "[o]ne's emotional sanctum is certainly due the same expectations of privacy as one's physical environment." *Id. Phillips* is cited approvingly in W. Prosser & J. Keeton, *Prosser and Keeton on Torts* § 117 (Supp.1988), which states that "highly personal questions or demands by a person in authority may be regarded as an intrusion on psychological solitude or integrity and hence an invasion of privacy." *Prosser and Keeton on Torts*, in turn, is cited by *Cullison* as it defines Indiana invasion-of-privacy law. *Cullison*, 570 N.E.2d at 31.

It would be premature for the court to rule now concerning the parameters of the invasion of privacy tort in Indiana. The court does conclude that, based upon Garus' allegations, it is not beyond doubt that she could not prevail on her invasion-of-privacy count.

The defendants' motion to dismiss is **DENIED** in its entirety.

**SO ORDERED.**