Rafaela RIVERA, et al., Plaintiffs,

v.

UNITED STATES of America, Defendant.

No. EP–94–CA–032–DB.

United States District Court,
W.D. Texas,
El Paso Division.

Dec. 11, 1995.

Robert Perez, El Paso, Texas, for plaintiffs.

Steve Jurecky, El Paso, Texas, Asst. U.S. Attorney, for defendant.

## MEMORANDUM OPINION AND ORDER

BRIONES, District Judge.

On this day, the Court considered the above-captioned cause. Trial in this matter was before the Bench on November 30, 1995. Prior to trial, on November 8, 1995, Defendant filed a Motion to Dismiss or, in the Alternative, Motion for Summary Judgment. Plaintiffs' Response was filed on November 27, 1995. After Plaintiffs introduced testimony and evidence, and rested their case, Defendant moved for judgment as a matter of law pursuant to Rule 50(a) of the Federal Rules of Civil Procedure. The Court declined to rule at that time. Defendant introduced testimony and evidence, and both par-

ties closed their respective cases. After due consideration, the Court is of the opinion that this matter be resolved as set forth below.

### FACTUAL BACKGROUND

On February 8, 1992, at approximately 5:30 a.m., Plaintiff Raymundo Rivera ("Mr. Rivera") and Plaintiff Rafaela Rivera ("Mrs. Rivera") arrived at the Paso Del Norte port of entry, El Paso, Texas, where they applied for re-entry into the United States. Plaintiffs had been visiting relatives in Ciudad Juarez, Republic of Mexico. Upon arriving at the Customs Service inspection booths, Mrs. Rivera declared her citizenship, and Mr. Rivera displayed proof of his Permanent Resident Alien status.[1] At this point, United States Customs Inspector Antonio Martinez ("Martinez") requested that Mrs. Rivera exit the automobile to open the trunk. Mrs. Rivera complied with Martinez' requests. While inspecting the interior of the trunk, Martinez used a small hammer to tap various areas in the trunk. Mrs. Rivera asked why Martinez was tapping so forcefully, and Martinez responded that he was just doing his job.

Martinez was being "backed up" by U.S. Customs Service Canine Enforcement Officer Brian Martin ("Martin").[2] As Martinez continued his inspection of Plaintiffs' automobile Mrs. Rivera began pacing back and forth near Martinez. Martin instructed Mrs. Rivera to step away from Martinez. When Mrs. Rivera failed to comply with Martin's instructions Martin interposed himself between Mrs. Rivera and Martinez, and again instructed Mrs. Rivera to step away from Martinez[3]. Mrs. Rivera, at that point, continued

to approach Martinez. Martin attempted to place Mrs. Rivera in a wrist/arm lock which she successfully avoided. Martin attempted to place Mrs. Rivera in a wrist/arm lock a second time and was successful, although Mrs. Rivera continued to struggle. Martin maintained his wrist/arm lock on Mrs. Rivera until Supervisor Gilbert Haro instructed Martin to release her.

On February 2, 1994, Plaintiffs filed the above-captioned action pursuant to the Federal Tort Claims Act ("FTCA"), 28 U.S.C. § 2671, et seq. Plaintiffs allege several acts of negligence pursuant to 28 U.S.C. § 1346(b), including excessive use of force.[4] On October 3, 1995, Defendant filed a Motion to Dismiss for Failure to Respond. Plaintiffs filed no response. On October 5, 1995, this Court granted Defendant's motion as to all claims except the alleged excessive use of force claim. On November 28, 1995, two days before trial, Plaintiffs requested leave of Court to file an amended complaint. The Court granted Plaintiffs' motion that same day.[5] As noted earlier, this matter was tried before the Bench on November 30, 1995. Defendant renewed its Rule 50 motion for judgment as a matter of law after both parties had rested and closed.

### DISCUSSION

 As a preliminary matter, the Court notes that the United States Customs Service has the authority to make inspections of persons and property entering the United States. 19 U.S.C. § 1582; See also United States v. Ramsey, 431 U.S. 606, 97 S.Ct. 1972, 52 L.Ed.2d 617 (1977); Almeida–San-

1. The Court notes the Mrs. Rivera was driving a 1980 Pontiac automobile; her husband Raymundo was a passenger in the back seat.

2. As a Customs Service Canine Enforcement Officer, Martin's duties included the detention of goods and merchandise and the related and inclusive duties of inspection of vehicles and persons, who may be carrying said goods and merchandise, as they enter the United States from Mexico. Martin was also required to "back-up" other Customs Inspectors as they performed the aforementioned inspections. The goal of such inspections is to determine whether any collectible tax or duty is owed on goods or merchandise brought into the United States, and to search for contraband.

3. Martinez was bent forward at the waist while he continued his inspection of the vehicle. His back was to Mrs. Rivera and his weapon was exposed.

4. The Court notes that Plaintiffs complied with a pre-suit requirement that they bring an administrative claim against the Department of the Treasury. Said claim was denied on October 14, 1993.

5. The Court notes that in addition to the excessive use of force claim, Plaintiffs also included a claim for intentional infliction of emotional distress.

*chez v. United States,* 413 U.S. 266, 93 S.Ct. 2535, 37 L.Ed.2d 596 (1973); *Torres v. Com. of Puerto Rico,* 442 U.S. 465, 99 S.Ct. 2425, 61 L.Ed.2d 1 (1979) ("The authority of the United States to search the baggage of arriving international travelers is based in its inherent sovereign authority to protect its territorial integrity"). Obviously, the Customs agents in this case were well within their authority to search the Riveras' automobile as they entered the United States from the Republic of Mexico.

It is well settled that the United States, "as sovereign, is immune from suit save as it consents to be sued, ... and terms of its consent to be sued in any court define that court's jurisdiction to entertain the suit". *Lehman v. Nakshian,* 453 U.S. 156, 160, 101 S.Ct. 2698, 2701, 69 L.Ed.2d 548 (1981) (quoting *United States v. Testan,* 424 U.S. 392, 399, 96 S.Ct. 948, 953, 47 L.Ed.2d 114 (1976)). Additionally, the United States may define the terms and conditions under which it will be sued. *United States v. Kubrick,* 444 U.S. 111, 100 S.Ct. 352, 62 L.Ed.2d 259 (1979). This the United States has done under the FTCA. However, the FTCA waiver of sovereign immunity is subject to thirteen enumerated exceptions. *See* 28 U.S.C. § 2680(a)–(f), (h)–(n).

■ The relevant FTCA exception in this instance is 28 U.S.C. § 2680(c). This section exempts from the coverage of the FTCA statute:

> Any claim arising in respect to the assessment or collection of any tax or customs duty, or in the detention of any goods or merchandise by any officer of customs or excise or any other law enforcement officer.

The Supreme Court has interpreted the words "any claims arising in" to mean any claims "arising out of". *Kosak v. United States,* 465 U.S. 848, 104 S.Ct. 1519, 79 L.Ed.2d 860 (1983).[6] It follows that the United States is immune from suits which arise out of the actions of a Customs official in the performance of his duties.

■ The government contends that section 2680 applies to the instant case because Martin's activities were within the scope of his official duties. The government claims that Mrs. Rivera was injured during the course of the "assessment, collection or detention of goods and merchandise" by a customs officer during a customs inspection. The government's position is that the operation of section 2680(c) bars Plaintiffs' claims which arise out of those activities.

In *Capozzoli v. Tracey,* 663 F.2d 654 (5th Cir.1981), the Fifth Circuit Court of Appeals held that:

> section 2680(c) has been interpreted broadly by the courts to preclude suits for damages arising out of the allegedly tortious activities of Internal Revenue Service ("IRS") agents when those activities were in any way related to the agents official duties.[7]

The Court further noted that Congress, through the enactment of section 2680(c), intended "to insulate the IRS from tort liability stemming from any of its revenue raising activities." *Id.*[8] The Court in *Capozzoli* also held that the language of section 2680(c) is broad enough to encompass any activities of a customs agent "even remotely related to his or her official duties". *Id* at 658.

It is clear that Martin's activities occurred during the performance of his official duties as a Customs Service officer. The Riveras' vehicle was being lawfully detained and searched for the purpose of determining whether the Riveras owed any duty or tax to the United States and/or whether the River-

---

**6.** In *Kosak* the Supreme Court held that Section 2680(c) barred any claim resulting from the negligent handling or storage of detained property by customs officials. This was due to the fact that the Court found that Congress had intended to exclude from suit certain government activities which should not be disrupted by the threat of lawsuits.

**7.** In *Capozzoli,* the Plaintiff claimed that the IRS agent was crawling about her property and tak-

ing photographs which caused her extreme embarrassment, humiliation and mental distress. Plaintiff alleged that the agent was not involved in either the assessment or collection of taxes.

**8.** In addition, the Court notes that there is no distinction between IRS agents and Customs agents in 28 U.S.C. § 2680(c). Both perform similar functions with respect to the assessment and collection of taxes owed to the United States.

as were transporting any contraband. It is immaterial that the inspection resulted in no duty or tax being owed. Section 2680(c) contemplates the "assessment *or* collection" of any tax or duty (emphasis added). The ordinary meaning of the term "assessment" encompasses the act of stopping international travelers entering the United States and inspecting their property to determine the value of any duty owed to the United States. It is inconsequential that such a valuation equals zero and therefore no duty is owed. Accordingly, Plaintiffs' claim against the United States for Martin's alleged excessive use of force is barred.[9]

Plaintiffs next direct the Court's attention to *Gasho v. United States,* 39 F.3d 1420 (9th Cir.1994). Plaintiffs argue that this case stands for the proposition that section 2680(c) does not bar an intentional tort claim which arises out of an arrest by a Customs agent. Plaintiffs' argument as to the holding in *Gasho* is correct. However, *Gasho* is not applicable to the facts of the case at bar.

■ Section 2680(c) does not bar an intentional tort claim arising out of an arrest by a Customs agent as the exception applies only to the detention of goods and merchandise, not persons. *Id* at 1434. Even if this Court accepts the reasoning in *Gasho,* Plaintiffs' argument must fail. The problem is twofold. First, Martin did not arrest Mrs. Rivera. He detained her to protect the safety of Agent Martinez as Martinez performed his inspection of the Riveras' vehicle. Second, the only manner in which the Riveras could establish a claim for the intentional infliction of emotional distress is by proving that Martin acted as he did with the intent of inflicting emotional distress. In order to prove such intent, the Riveras' must establish that Martin acted with malice when he imposed the wrist/arm lock on Mrs. Rivera. *See* Restatement (Second) of Torts, § 46; *Garus v. Rose Acre Farms, Inc.,* 839 F.Supp. 563, 569 (N.D.Ind.1993). This Court finds that Martin's detention of Mrs. Rivera was not moti-

vated by malice; rather, the detention was motivated by Martin's obligation and desire to protect the safety of his fellow officer.[10] Accordingly, Plaintiffs' claim for intentional infliction of emotional distress also fails.

■ The Court is aware that this holding leaves Plaintiffs without a remedy against an employer who, if not the government, would be liable for its employees' conduct under the theory of respondeat superior. Nevertheless, sovereign immunity in general, and section 2680(c) specifically, is entitled to a broad rather than a narrow interpretation. Absent a specific waiver of sovereign immunity, this Court lacks subject matter jurisdiction. *See Lehman v. Nakshian,* 453 U.S. 156, 161, 101 S.Ct. 2698, 2702, 69 L.Ed.2d 548 (1981); *Soriano v. United States,* 352 U.S. 270, 276, 77 S.Ct. 269, 273, 1 L.Ed.2d 306 (1957); *Capozzoli v. Tracey,* 663 F.2d 654, 658 (5th Cir. 1981).

Therefore, **IT IS HEREBY ORDERED** that Defendant's Motion to Dismiss pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure is **GRANTED**.

---

9. The Court is aware that such a ruling effectively leaves Plaintiffs with no remedy against the United States. However, Plaintiffs may still bring an action against Martin in his individual capacity for violation of the Plaintiffs Fourth Amendment Rights. *See Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics,*

403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971).

10. Even if Martin's actions were more aggressive than required under the circumstances, there has been no showing that his detention of Mrs. Rivera was motivated by malice.