E. Carol PITTMAN

v.

CORRECTIONAL HEALTHCARE
SOLUTIONS, INC.

Civ. A. No. 93–7016.

United States District Court,
E.D. Pennsylvania.

Nov. 10, 1994.

E. Carol Pittman, pro se.

Donna L. Nuttall, Chalfont, PA, for defendant.

### MEMORANDUM AND ORDER

ANITA B. BRODY, District Judge.

*Pro se* plaintiff, E. Carol Pittman, filed suit against her former employer, Correctional Healthcare Solutions, Inc. ("CHS"), alleging race, gender, and age discrimination. CHS has moved to dismiss the complaint pursuant to Fed.R.Civ.P. 12(b)(6) for failure to state a cognizable claim. I will dismiss plaintiff's race and age discrimination claims, and one of two potential gender discrimination claims, without prejudice to replead. I conclude, however, that plaintiff's remaining gender discrimination claim is adequately pleaded; accordingly, I will deny CHS's motion to dismiss as to this claim.

### I. THE COMPLAINT

Plaintiff's complaint, hand-written on a standard form, alleges the following "Statement of Claim":

Jorge Lopez, my supervisor, frequently made racist and sexist remarks [and] also discriminated against me because of my age. [T]his began approximately 1–92. I was denied benefits and raises because of the above and consequently fired.

Compl. ¶ 3. The complaint seeks as relief:

[A]ll raises and salaries I lost as a result of being fired, and something for mental anguish [and] pain and suffering directly resulting from Mr. Lopez and CHS.

*Id.* ¶ 4. Plaintiff's allegations are amplified somewhat by her Request for Appointment of Attorney filed the same day as the complaint. This request clarifies the age discrimination claim as follows: "Frequently referred to as 'old broads' and 'bitches'." Request for Appointment of Attorney ¶ 4. The race and gender discrimination claims, respectively, are given the following elaboration in the request: "Supervisor frequently used, 'Niggers and onions make you cry,'" and "Often referred to his penis and my large breast[s]." *Id.*

CHS attacks the complaint on three principal grounds: (i) it fails to plead with requisite specificity the particular cause of action or conduct charged against CHS; (ii) it fails to plead a *prima facie* case under either of the two presumed statutory bases for plaintiff's action, Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e–2 (1982), and the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. §§ 621–634 (1982); and (iii) it is defective on certain procedural points.

I will treat all of CHS's non-procedural objections together. Specifically, I will assess the adequacy of plaintiff's allegations against CHS in light of the requirements for her potential claims under Title VII and the ADEA. CHS's procedural objections, addressed last, will be disposed of summarily.

## II. DISCUSSION

■ Fed.R.Civ.P. 8(a) requires a "short and plain statement of the claim showing the pleader is entitled to relief." In considering a motion to dismiss, all factual allegations in the complaint must be accepted as true, and all reasonable inferences from those allega- tions must be drawn in favor of the plaintiff. *Colburn v. Upper Darby Township*, 838 F.2d 663 (3rd Cir.1988), *cert. denied*, 489 U.S. 1065, 109 S.Ct. 1338, 103 L.Ed.2d 808 (1989). The motion to dismiss should be granted only if there is no conceivable set of facts that could be proved that would entitle the plaintiff to relief. *Conley v. Gibson*, 355 U.S. 41, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). I am to be especially lenient with pleadings drafted by a *pro se* plaintiff. *E.g., Miller–Turner v. Reich,* No. 93 Civ. 3369, 1994 WL 52761, at *1 (E.D.Pa. Feb. 22, 1994).

■ CHS contends that under the Third Circuit's heightened pleading standard for civil rights claims, plaintiff's allegations must be alleged with specificity. The heightened pleading standard no longer appears to be the law after the Supreme Court's decision in *Leatherman v. Tarrant County Narcotics Unit,* —— U.S. ——, 113 S.Ct. 1160, 122 L.Ed.2d 517 (1993). Although *Leatherman* addressed claims arising under under 42 U.S.C. § 1983, its reach has been extended to cases similar to this one. *See Miller–Turner v. Reich,* No. 93 Civ. 3369, 1994 WL 243865, at *1 (E.D.Pa. June 6, 1994) (Title VII claims); *Garus v. Rose Acre Farms, Inc.,* 839 F.Supp. 563, 568 (N.D.Ind.1993) (Title VII claims). Thus, only the generous contours of Fed.R.Civ.P. 8 apply here.

Presuming that plaintiff's legal theories arise under Title VII and the ADEA, the complaint can fairly be read to assert claims for race-, gender-, and age-based discrimination in denial of benefits or raises or in termination ("the discrimination claims"); and for sexual harassment ("the harassment claim"). Each of these two categories is discussed separately.

### A. *The Discrimination Claims*

■ To establish a *prima facie* case against CHS for the discrimination claims, plaintiff must plead and prove the following elements: (1) she is a member of a protected class, (2) she was qualified for the raise or benefit she did not receive or for the position from which she was discharged, and (3) others not in the protected class were treated more favorably. *See Weldon v. Kraft,* 896 F.2d 793, 797 (3rd Cir.1990) (Title VII

claims); *Kulp v. Dick Horrigan VW, Inc.,* No. 93 Civ. 5335, 1994 WL 3393 (E.D.Pa. Jan. 3, 1994) (Title VII claims); *Chipollini v. Spencer Gifts, Inc.,* 814 F.2d 893, 897 (3rd Cir.) (ADEA claims), *cert. dismissed,* 483 U.S. 1052, 108 S.Ct. 26, 97 L.Ed.2d 815 (1987).

Plaintiff's discrimination claims do not satisfy these pleading requirements, even considering the amplifying material contained in the Request for Appointment of Attorney. *E.g., Hunt v. United States Air Force,* 848 F.Supp. 1190, 1192 (E.D.Pa.1994) (material outside the complaint but appearing in record may be considered on motion to dismiss) (citing *Chester County Intermediate Unit v. Pennsylvania Blue Shield,* 896 F.2d 808, 812 (3rd Cir.1990)).

■ Plaintiff is a woman and thus a member of a protected class for purposes of her gender-based discrimination claim. With respect to her racial discrimination claim, moreover, I can reasonably infer her protected status as an African–American from the comment attributed to Mr. Lopez in her Request for Appointment of Attorney, "Niggers and onions make you cry." There is, however, no allegation in the complaint as to plaintiff's age and no basis from which to infer her protected status for purposes of her age discrimination claim. Thus, plaintiff's ADEA claim lacks an essential allegation. *Chipollini v. Spencer Gifts, Inc.,* 814 F.2d at 897.

Furthermore, plaintiff has not satisfied the remaining prongs of the analysis on any of the discrimination claims. There is no allegation or basis for inferring that plaintiff was qualified for any raise or benefit she did not receive or for the position from which she was terminated. Similarly, the complaint contains no allegation or basis for inferring that others not belonging to the relevant protected class were treated any differently. *Compare Kulp v. Dick Horrigan VW, Inc.,* 1994 WL 3393, at *1 (pleading sufficient where plaintiff's qualifications and more favorable treatment of co-workers were expressly set forth).

Because plaintiff's discrimination claims fail to set forth a *prima facie* case under Title VII or the ADEA, they must be dismissed. Plaintiff may re-plead these claims within ten days to allege their requisite elements.

### B. *The Harassment Claim*

■ Plaintiff's complaint does make out a sufficient sexual harassment claim under Title VII on a "hostile work environment" theory. Such a claim requires that plaintiff plead and prove the following elements: (1) she suffered intentional discrimination because of her gender, (2) the discrimination was pervasive and regular, (3) the discrimination detrimentally affected her, (4) the discrimination would detrimentally affect a reasonable person of the same gender in that position, and (5) the existence of *respondeat superior* liability. *Andrews v. City of Philadelphia,* 895 F.2d 1469, 1482 (3rd Cir.1990); *Giordano v. William Patterson College,* 804 F.Supp. 637, 642 (D.N.J.1992).

■ In *Harris v. Forklift Sys., Inc.,* —— U.S. ——, 114 S.Ct. 367, 126 L.Ed.2d 295 (1993), the Supreme Court addressed the "hostile work environment" theory of harassment, reaffirming the earlier ruling in *Meritor Sav. Bank v. Vinson,* 477 U.S. 57, 106 S.Ct. 2399, 91 L.Ed.2d 49 (1986). The Court observed that Title VII is violated where "the workplace is permeated with 'discriminatory intimidation, ridicule, and insult' that is 'sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.'" *Harris v. Forklift Sys. Inc.,* —— U.S. at ——, 114 S.Ct. at 370 (citations omitted). In determining if a work environment is "hostile" or "abusive," courts look to the totality of the circumstances, including: the frequency and severity of the conduct; whether the conduct is physically threatening or humiliating, or merely an offensive utterance; and whether the conduct unreasonably interferes with the victim's work performance. *Id.,* at ——, 114 S.Ct. at 371.

■ In light of this standard, I cannot say that there is no set of facts that plaintiff could prove that would establish her harassment claim. *Conley v. Gibson,* 355 U.S. at 45–46, 78 S.Ct. at 101–02. Plaintiff alleges that her supervisor made sexist remarks frequently beginning in early 1992, referring to

his penis and to plaintiff's large breasts. Compl. ¶ 3, Request for Appointment of Attorney ¶ 4. Such conduct could create a "hostile" or "abusive" work environment. *Andrews v. City of Philadelphia*, 895 F.2d at 1485 ("[P]ervasive use of derogatory and insulting terms relating to women generally and addressed to female employees personally may serve as evidence of a hostile environment."). The tendency of such remarks to cross into harassment, moreover, is magnified by plaintiff's allegation that, in connection with Mr. Lopez' statements, she was denied benefits and raises. *See Kulp v. Dick Horrigan VW, Inc.*, 1994 WL 3393, at *2 (while co-worker's alleged comment "slut" would not alone constitute a hostile work environment, such comment might in light of allegations that plaintiff was terminated for infractions much less serious than those for which her male coworkers were not disciplined). Finally, plaintiff alleges that she was suffered mental anguish, denial of benefits and raises, and ultimately termination as a result of the alleged conduct. Compl. ¶¶ 3–4. This is sufficient to allege that plaintiff was detrimentally affected by the alleged conduct. *Andrews v. City of Philadelphia*, 895 F.2d at 1484. I can infer that a reasonable person in plaintiff's position would be similarly affected.

CHS disputes that any of plaintiff's allegations tie it to the alleged conduct of Mr. Lopez. I disagree. Plaintiff need not expressly connect CHS to Mr. Lopez' alleged conduct. Rather, she must allege a sufficient basis from which to infer *respondeat superior* liability on the part of CHS. *See, e.g., Kulp v. Dick Horrigan VW, Inc.*, 1994 WL 3393, at *3 (inferring *respondeat superior* liability for harassment). I conclude that plaintiff has done so.

Under the law of this Circuit, agency principles are applicable in determining the existence of *respondeat superior* liability. *Andrews v. City of Philadelphia*, 895 F.2d at 1486. Thus, if a plaintiff proves that a management-level employee "had actual or constructive knowledge about the existence of a sexually-hostile environment and failed to take prompt and adequate remedial action, the employer will be liable." *Id.* (citations

omitted). Here, plaintiff alleges that Mr. Lopez was her supervisor, arguably a management-level employee. If a supervisory employee is himself accused of creating the harassing environment, *a fortiori* the requirement of *respondeat superior* is alleged. *Cf. Andrews v. City of Philadelphia*, 895 F.2d at 1486 (where employer's supervisory personnel manifested "unmistakable acquiescence in or approval of the harassment, the burden on the employer seeking to avoid liability [to show that it took prompt and adequate remedial action] is especially high") (citations omitted). Moreover, the alleged decisions to deny plaintiff raises and benefits and to terminate her employment are alleged to be part of the pattern of harassment. These decisions may have been made at the corporate level or at least known to corporate-level employees. Thus, an additional basis for inferring *respondeat superior* liability exists here. *See Kulp v. Dick Horrigan VW, Inc.*, 1994 WL 3393, at *3 (inferring that management had knowledge of decisions to deny plaintiff perks and privileges and to assign plaintiff irregular job responsibilities).

Accordingly, plaintiff's harassment claim is adequately pleaded.

### C. CHS's Procedural Objections

Finally, CHS asserts that the complaint is defective for several procedural reasons: (i) the complaint lists inconsistent home addresses for plaintiff, (ii) it fails to attach an Equal Employment Opportunity Commission "Right-to-Sue" letter to which it refers, and (iii) it requests improper relief. These objections do not merit extended discussion. Suffice it to say that in the context of this *pro se* pleading, none of them is sufficient to compel dismissal of plaintiff's claims. *See, e.g., Miller–Turner v. Reich*, 1994 WL 52761, at *1 (court is extremely lenient with *pro se* pleading).

### III. CONCLUSION

For the foregoing reasons, CHS's motion to dismiss is **granted** with respect to plaintiff's discrimination claims, which are **dismissed without prejudice.** Plaintiff is given **ten (10) days** in which to re-plead these claims. With respect to plaintiff's sexual

harassment claim, CHS's motion to dismiss is denied.

**IT IS SO ORDERED.**