**Mary J. MOORE, Plaintiff,**

v.

**GROVE NORTH AMERICA, INC., d/b/a Grove Worldwide, Defendant.**

**Civil Action No. 1:CV–95–612.**

United States District Court, M.D. Pennsylvania.

April 16, 1996.

Shawn D. Lochinger, Todd J. Shill, Rhoades & Sinon, Harrisburg, PA, David Francis O'Leary, Rhoads & Sinon, Harrisburg, PA, for plaintiff.

Vincent Candiello, Morgan, Lewis & Bockius, Harrisburg, PA, S. Whitney Rahman, Harrisburg, PA, for defendant.

## MEMORANDUM

CALDWELL, District Judge.

This action arises from Plaintiff's employment with the Defendant, Grove North America, Division of Kidde Industries, Inc. ("Grove"). Plaintiff contends Grove discriminated against her during her employment and with respect to her termination, in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* We are considering Grove's motion for summary judgment.

## I. *BACKGROUND*

Plaintiff was hired by Grove on October 19, 1987 to work in its paint shop and on March 6, 1989 was promoted to supervisor. Thereafter, she was transferred to the Sub-Assembly Building and, in October, 1993, was transferred to what is referred to as the Heavy Equipment Mobile Tactical Truck Building.

After this transfer Plaintiff's superior was one Larry Keller. Plaintiff alleges that Larry Keller treated her differently than her fellow supervisors, and although she confronted him, he failed to do anything about her concerns and told her "not to go over his head."

Upon return from a vacation on July 5, 1994, Plaintiff was told by another employee that Keller had made a derogatory comment about her and women in general. Specifically, Larry Keller allegedly stated that "women do not belong in supervision." Plaintiff went to Tom Keller (Larry Keller's brother), who was Grove's Director of Manufacturing and Larry Keller's immediate boss, and requested a meeting with him and Larry.

At the meeting, Plaintiff informed Tom Keller about: (1) problems that had arisen in Plaintiff's department the previous week; (2) the mistreatment (different from that of the male supervisors) that Plaintiff received from Larry Keller; (3) Larry Keller's alleged statement that "women do not belong in supervision"; and (4) Larry Keller's failure to communicate with her.[1] When she concluded, Tom Keller asked her, "What do you want me to do, take out a .44 and shoot him?" Larry Keller, who was laughing, then said "Mary what do you think he's going to do, fire me?" Tom Keller then told Plaintiff, in a hostile tone of voice, that she could "see someone else" about the problems if she wanted to. Thereafter, from July 11, 1994 through July 20, 1994, Plaintiff sought legal advice from the EEOC, the Pennsylvania Human Relations Commission, and a private attorney, who advised her concerning a discrimination claim.

On July 29, 1994, Plaintiff's husband, Dave Moore, who is also employed by Grove, was demoted. Plaintiff believed the decision was influenced by her meeting with the Kellers on July 7, 1994. On August 1, 1994, Plaintiff went to Tom Keller's office, but was told that he was in a meeting. She initially waited in Keller's office, then decided to interrupt him. Plaintiff apologized for interrupting the meeting, and informed Tom Keller that she had visited an attorney and was going to the "labor board."

Tom Keller got up, approached Plaintiff, and attempted to (or did) grab her arm. Plaintiff told him not to touch her and Keller

---

1. We recognize that Grove disputes many of the facts set forth herein. However, Plaintiff has declared, under penalty of perjury, that these facts are accurate. On a motion for summary judgment, disputed facts must be construed in favor of the nonmoving party.

directed Plaintiff to go to his office and not to leave. Plaintiff refused, and returned to her work station. Soon after, Larry Keller and John Hartman, another building manager, approached Plaintiff. Larry Keller instructed Plaintiff to accompany him to the office of Roger Hockenberry, Grove's Director of Human Resources. Plaintiff refused, stating that she would speak with human resources personnel if they came to her area.

Larry Keller discussed with Hockenberry what Plaintiff said, then informed Plaintiff that she had been placed on disciplinary suspension and must leave the premises. She refused. Thereafter, Hockenberry repeated the order and Plaintiff asked what would happen if she refused. Hockenberry informed her that he would call the police. At this point, Plaintiff told Hockenberry about Larry Keller's alleged derogatory statement, that she had seen a lawyer, and that she had been to the labor board, and she then agreed to leave.

Hockenberry permitted Plaintiff to retrieve some personal belongings, but instructed her not to speak to anyone. Plaintiff spoke to some employees while on the shop floor but there is a dispute as to what she said.

Thereafter, Gary Spickler, a Grove Vice-President, met with Hockenberry and directed him to gather and analyze all of the facts associated with the August 1, 1994 incident. Hockenberry called Plaintiff and requested that she attend a meeting with him and another Grove employee. During this meeting, Plaintiff discussed her allegations with respect to Larry Keller, as well as her meeting with the Kellers on July 7, 1994. On August 15, 1994, she was terminated.

Plaintiff instituted this action on April 20, 1995. Her complaint advances four claims under Title VII: disparate treatment (Count I); hostile work environment (Count II); discriminatory discharge (Count III); and retaliatory discharge (Count IV).[2]

2. In her response to Grove's motion for summary judgment, Plaintiff produced a nearly 70 page declaration. In this filing, Plaintiff discusses the testimony of other witnesses, advances legal arguments, and presents a deluge of irrelevant information. We will not consider those sections

## II. LAW AND DISCUSSION

### A. Standard of Review

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56; *Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). In reviewing the evidence, facts and inferences must be viewed in the light most favorable to the nonmoving party. *Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538, 553 (1986). Summary judgment must be entered in favor of the moving party "[w]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party...." *Matsushita,* 475 U.S. at 586–87, 106 S.Ct. at 1356, 89 L.Ed.2d at 552 (citations omitted).

When a moving party has carried his or her burden under Rule 56, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts...." *Matsushita,* 475 U.S. at 586–87, 106 S.Ct. at 1356, 89 L.Ed.2d at 552 (citations omitted). The nonmoving party "must present *affirmative evidence* in order to defeat a properly supported motion for summary judgment," and cannot "simply reassert factually unsupported allegations contained in [the] pleadings." *Williams v. Borough of West Chester,* 891 F.2d 458, 460 (3d Cir.1989) (emphasis in original) (citation omitted). However, "[i]f the [nonmoving party's] evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson v. Liberty Lobby,* 477 U.S. 242, 249–50, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202, 212 (1986) (internal citations omitted).

of the declaration, and view the filing of this lengthy and burdensome document as a totally inappropriate means by which to submit a factual declaration. We will, however, rely upon the declaration insofar as it sets forth relevant facts.

**B.** *Hostile Work Environment* (Count II)

▉ Plaintiff alleges that she was subjected to unlawful harassment based upon her gender during her employment at Grove. The Supreme Court first recognized the availability of a "hostile work environment" claim under Title VII in *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 106 S.Ct. 2399, 91 L.Ed.2d 49 (1986), where it stated that "[f]or sexual harassment to be actionable, it must be sufficiently severe or pervasive 'to alter the conditions of [the victim's] employment and create an abusive working environment.'" *Id.* at 67, 106 S.Ct. at 2405, 91 L.Ed.2d at 60 (citation omitted) (alteration in original). To establish a hostile work environment claim, a plaintiff must demonstrate that: (1) she suffered unwanted, intentional discrimination because of her gender; (2) the discrimination was pervasive and regular; (3) the discrimination detrimentally affected her; (4) the discrimination would detrimentally affect a reasonable person of the same gender in that position; and (5) respondeat superior liability existed. *Andrews v. City of Philadelphia*, 895 F.2d 1469, 1482 (3d Cir.1990). "In determining if a work environment is 'hostile' or 'abusive', courts look to the totality of the circumstances, including: the frequency and severity of the conduct; whether the conduct is physically threatening or humiliating, or merely an offensive utterance; and whether the conduct unreasonably interferes with the victim's work performance." *Pittman v. Correctional Healthcare Solutions, Inc.*, 868 F.Supp. 105, 108 (E.D.Pa. 1994) (citing *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 22–23, 114 S.Ct. 367, 371, 126 L.Ed.2d 295, 302 (1993)). We need only examine the first element of the *Andrews* test.

▉ In her brief, Plaintiff states that "her Declaration sets forth a panoply of discriminatory behavior by Larry Keller, which a reasonable jury could conclude was animated by hostility to Mrs. Moore because she was a woman supervisor." [Pl.'s Br. in Opp'n to S.J. at 7]. She does not, however, specifically identify any alleged misbehavior that could permit a finding that she was subjected to discrimination *because of her gender.*[3] Although we will not address the surfeit of allegations set forth in Plaintiff's declaration, we will discuss some of her complaints.

Plaintiff contends that Larry Keller did not like her working for him, would not listen to her, and made her feel like she was "bothering him" when she spoke to him. [Pl.'s Decl. at ¶ 44]. In contrast, she asserts that in her opinion he did not act that way to the male employees and would "kid around them, talk to them, and have frank exchanges." *[Id.]* In addition, she contends that Keller was "contemptuous" with her, called her a "child", and made her feel as though she did not know what she was talking about. [*Id.* at 45–46].

▉ While we agree that these allegations, if true, may make for an unpleasant work environment, there is *nothing* in the record to suggest that Keller's actions were motivated because of Plaintiff's gender. "If the nature of an employee's environment, however unpleasant, is *not due to her gender,* she has *not* been the victim of sex discrimination as a result of that environment." *Gross v. Burggraf Const. Co.*, 53 F.3d 1531, 1537 (10th Cir.1995) (emphasis in original) (citing *Stahl v. Sun Microsystems, Inc.*, 19 F.3d 533, 538 (10th Cir.1994)); *see also Miller v. Aluminum Co. of America*, 679 F.Supp. 495, 502 (W.D.Pa.) ("Snubs and unjust criticisms are not poisonous enough to create an actionable hostile working environment.... Hostile behavior that does not bespeak an unlawful motive cannot support a hostile work environment claim"), *aff'd*, 856 F.2d 184 (3d Cir. 1988). Here, the fact that Keller may have disliked Plaintiff or treated her poorly cannot, without more, amount to gender based harassment.[4]

---

3. Grove objects to Plaintiff's "reference" to her declaration without discussion of specific conduct. Although this objection is well taken, the issue is moot in light of our determination below.

4. Plaintiff makes repeated references to Larry Keller's "better" treatment of male supervisors. However, there was only one other female employee under Larry Keller's supervision and there is nothing in the record to indicate that she was treated differently than the male supervisors. In fact, she related that she had a "good working relationship" with Keller. [N. Higgins Dep. at 14]. This buttresses the assertion that Larry Keller's poor treatment of Plaintiff, assuming her

■ Plaintiff also complains that Larry Keller used an offensive four letter word to and in front of her, even after she informed him that she did not curse and asked him to stop. Again, the fact that Larry Keller cursed at the Plaintiff is not evidence that he harassed her *because* of her sex. In fact, the record is replete with testimony that Larry Keller swore at male supervisors, [Pl.'s Decl. at ¶ 47], and contains nothing to support a finding that Plaintiff was targeted because she was a female.[5] To be actionable, harassment must be such that it "would not occur but for the sex of the employee...." *Gross,* 53 F.3d at 1537 (citation omitted).

Insofar as Plaintiff contends that the offensive language itself amounted to harassment, that argument must also be rejected. In *Baskerville v. Culligan Intern. Co.,* 50 F.3d 428 (7th Cir.1995), the court stated that

> [t]he concept of sexual harassment is designed to protect working women from the kind of male attentions that can make the workplace hellish for women.... It is not designed to purge the workplace of vulgarity. Drawing the line is not always easy. On one side lie sexual assaults; other physical contact, whether amorous or hostile, for which there is no consent express or implied; uninvited sexual solicitations intimidating words or acts; obscene language or gestures; pornographic pictures. On the other side lies the occasional vulgar banter, tinged with sexual innuendo, of coarse or boorish workers.

*Id.* at 430–31 (internal citations omitted); *see also Weinsheimer v. Rockwell Intern. Corp.,* 754 F.Supp. 1559, 1565 (M.D.Fla.1990)

("Rockwell's back shop had two marked characteristics, those of frequent contentiousness and vulgarity. The simple combination of these two traits should not, without more, equal a Title VII violation"), *aff'd,* 949 F.2d 1162 (11th Cir.1991). Here, there is no dispute that vulgar language was used at Grove. Although Larry Keller used an unsavory four letter word, he did not make sexual innuendos or use gender-related language toward Plaintiff or women in general. *See Andrews,* 895 F.2d at 1485; *Shaw v. Mellon Bank, N.A.,* No. 94–1765, 1995 WL 770415, *4 (W.D.Pa. Oct. 13, 1995); *cf. Carr v. Allison Gas Turbine Div., Gen. Motors Corp.,* 32 F.3d 1007, 1010 (7th Cir.1994) (plaintiff herself was the target of "deeply offensive and sexually harassing" conduct and statements); *Steiner v. Showboat Operating Co.,* 25 F.3d 1459, 1463–64 (9th Cir.1994), *cert. denied,* —— U.S. ——, 115 S.Ct. 733, 130 L.Ed.2d 636 (1995). Plaintiff has not cited, nor has our research disclosed, a single case in which a court held that a plaintiff had established a hostile work environment where a supervisor simply used inappropriate language in front of male and female employees.

■ The remaining allegations in Plaintiff's declaration also could not support a finding that she was subjected to harassment based on her gender.[6] Grove is entitled to summary judgment on Count II of the complaint.

### C. *Pretext* (Counts I and III)

■ In *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), the Supreme Court es-

---

allegations are true, was not based upon her gender.

5. Plaintiff also asserts that when Larry Keller and the other supervisors swore at each other judging from their tone of voice and demeanors, even though they were swearing at one another, they were *still* colleagues and could sit down and deal with each other at work. But when Larry swore at me, particularly when it was one-on-one in his office or in my office, there was a contemptuousness in his voice which together with his other actions towards me just made me very upset and made me feel humiliated.

[Pl.'s Decl. at ¶ 47]. Again, the simple fact that Larry Keller disliked Plaintiff or treated her dif-

ferently does not, without more, establish a hostile work environment. *See Miller,* 679 F.Supp. at 502.

6. The only example identified by Plaintiff that could lend support to a claim of hostile work environment is an assertion that a Grove Vice-President periodically told an "off-color" joke at a meeting of managers and supervisors that was held every six months. However, even assuming the individual sporadically told jokes that Plaintiff viewed as offensive, that alone is insufficient to establish "regular and pervasive" harassment based on gender. *See Drinkwater v. Union Carbide Corp.,* 904 F.2d 853, 863 (3d Cir.1990); *Andrews,* 895 F.2d at 1484.

tablished the basic framework and burdens of proof in Title VII pretext actions.[7] First, the plaintiff must establish a prima facie case of discrimination by a preponderance of the evidence. *Id.* at 802, 93 S.Ct. at 1824, 36 L.Ed.2d at 677. A prima facie case arises by showing that: (1) plaintiff is a member of a protected class; (2) plaintiff was qualified for the position; (3) plaintiff was discharged from or denied the position; and (4) non-members of the protected class were treated more favorably. *Id.; St. Mary's Honor Center v. Hicks,* 509 U.S. 502, 503–05, 113 S.Ct. 2742, 2746–47, 125 L.Ed.2d 407, 415–16 (1993). However, the prima facie case is not rigid and should be adjusted to comport to the claims advanced and facts presented. *Weldon v. Kraft, Inc.,* 896 F.2d 793, 798 (3d Cir.1990) (citation omitted).

 If the plaintiff succeeds in proving a prima facie case, the burden shifts to the employer to "articulate some legitimate, nondiscriminatory reason" for its actions. *Fuentes v. Perskie,* 32 F.3d 759, 763 (3d Cir.1994). If the defendant carries its "relatively light burden by articulating a legitimate reason for the unfavorable employment decision, the burden of production rebounds to the plaintiff, who must now show by a preponderance of the evidence that the employer's explanation is pretextual (thus meeting the plaintiff's burden of persuasion)." *Id.* (parenthetical in original). In order to establish pretext, and survive summary judgment,

> the plaintiff must point to some evidence, direct or circumstantial, from which a factfinder could reasonably either: (1) disbelieve the employer's articulated legitimate reasons; or (2) believe that an invidious discriminatory reason was more likely than

not a motivating or determinative cause of the employer's action.

*Id.* at 764 (citations omitted). We turn then to application of these standards to Plaintiff's claims.

1. Disparate Treatment (Count I)

 Plaintiff contends that Grove violated 42 U.S.C. § 2000e–2(a) "by subjecting her to disparate treatment [sic] than its male employees and supervisors." [Compl. ¶ 40]. Although not clear from the complaint, we assume this claim is based upon alleged "different" treatment of the Plaintiff by Larry Keller.[8] Plaintiff contends that "[b]ased on the evidence set forth in Mrs. Moore's Declaration, a reasonable jury could find that Mrs. Moore was treated differently than her male colleagues, Harry Varner and Barry Austin, and her predecessor, Mr. Bumbaugh, and that the reason she was treated differently and more harshly was because of her sex." [Pl.'s Br. in Opp'n to S.J. at 9]. Grove contends Plaintiff has failed to establish a prima facie case of disparate treatment. We agree.

There is nothing in the record to support a finding that Larry Keller discriminated against Plaintiff "with respect to [her] compensation, terms, conditions, or privileges of employment" because of her gender. 42 U.S.C. § 2000e–2(a)(1). She simply contends that she was treated "differently and more harshly" than the male supervisors. However, such undefined assertions of disparate treatment find no support in the law. Plaintiff has not cited a single case where an employee advanced a claim for disparate treatment based on treatment that was "different" where no adverse employment action was taken.[9] *Cf. Lefevre v. Design Profes-*

7. Intentional discrimination cases are either "pure discrimination", "mixed motive" or "pretext" cases. Determining which type of case is presented depends upon the type of evidence a plaintiff produces. *See Hook v. Ernst & Young,* 28 F.3d 366, 374 (3d Cir.1994). A pretext case is presented where a defendant's facially legitimate reason for an adverse employment decision is false and merely a pretext for the true reason, discrimination. In this case, Plaintiff's evidence indicates that she is advancing a pretext claim.

8. In her complaint, Plaintiff also appears to advance a claim for failure to promote, presumably

as part of her disparate treatment claim. [Compl. ¶ 17–18]. Plaintiff did not address this argument in her opposition to summary judgment, and insofar as the complaint asserts a claim for failure to promote, Grove is entitled to summary judgment.

9. This case is inapposite to cases where the conditions provided to a female employee differed from those of the male employees, see *Daughhetee v. Amax Coal Co., Div. of Amax, Inc.,* 761 F.Supp. 622, 626 (S.D.Ind.1990), and where a female employee was subjected to more severe discipline than male employees. *See Batson v.*

*sional Ins. Companies,* No. 93–20720, 1994 WL 544430, *1 (N.D.Cal. Sept. 27, 1994) (In a retaliation case, "[a]n employer's decision which has intangible and indirect effects on employee's status does not qualify as 'adverse action' ").

Because Plaintiff has not established a prima facie case of disparate treatment during her employment, Grove is entitled to summary judgment on Count I of the complaint.

### 2. Discriminatory Discharge (Count III)

Plaintiff contends that she was discharged on the basis of her gender. Grove concedes that Plaintiff has established a prima facie case of discriminatory discharge. Thus, the burden shifts to Grove to "articulate some legitimate, nondiscriminatory reason" for its actions. *Fuentes,* 32 F.3d at 763.

Grove maintains that Plaintiff was discharged because she engaged in six acts of insubordination and/or disorderly behavior: (1) she confronted Tom Keller by disrupting a meeting over which he was presiding; (2) she ignored Tom Keller's instruction to meet with him in his office to discuss her concerns; (3) she returned to her work location after Tom Keller instructed her not to; (4) she refused to go to human resources when told to do so; (5) she disobeyed a directive to leave Grove's premises; and (6) she spoke to her employees when retrieving her belongings from the shop floor after being told not to by Hockenberry. [Def.'s Br. in Support of S.J. at 6]. Grove maintains that the combination of the above acts by Plaintiff caused her termination. This reason, if true, is a legitimate basis for her discharge.

*Powell,* 912 F.Supp. 565, 572–73 (D.D.C.1996). Here, Plaintiff simply alleges that she was treated "differently and more harshly" than the male supervisors. The case relied upon by Plaintiff, *Ascolese v. Southeastern Pennsylvania Transp. Authority,* 902 F.Supp. 533 (E.D.Pa.1995) is also distinguishable. In *Ascolese,* the plaintiff applied and was rejected for a position with her employer, and thus sought to advance a claim based on her failure to receive that position. *Id.* at 545.

**10.** This issue is currently being considered by the Third Circuit en banc. One panel of that court recently questioned the disjunctive test of *Fuentes* (though recognizing it was bound to follow it) and proposed an alternative test to be applied on summary judgment when the employer has set

Accordingly, the burden returns to the Plaintiff to establish "by a preponderance of the evidence that the employer's explanation is pretextual (thus meeting the plaintiff's burden of persuasion)." *Fuentes,* 32 F.3d at 763 (parenthetical in original). Plaintiff can show pretext by introducing evidence from which a finder of fact could reasonably conclude that Grove's proffered reason is a fabrication or that Plaintiff's gender was more likely than not the true reason for her discharge. *Id.* at 764.

As set forth in the discussion below, concerning Plaintiff's retaliatory discharge claim, a reasonable jury might conclude that the reason advanced by Grove for Plaintiff's discharge was fabricated. *See Dancy v. Wallingford–Swarthmore School Dist.,* No. 93–4467, 1994 WL 410589, *5 n. 2 (E.D.Pa. Aug. 5, 1994) (recognizing that where jury could find that employer's proffered reason for discharge was fabricated on discriminatory discharge claim, analysis also applied to retaliation claim). Accordingly, Grove's motion for summary judgment will be denied with respect to Count III.

Notwithstanding our decision, we are troubled by the result we must reach. Although Plaintiff advances a claim for gender based discharge in Count III, there is nothing in the record that could support such a finding. However, because the jury could reasonably disbelieve Grove's proffered reason for her discharge, this claim must go forward. *See Fuentes,* 32 F.3d at 764.[10]

### D. *Retaliatory Discharge* (Count IV)

Plaintiff also advances a claim under 42 U.S.C. § 2000e–3, which provides that

forth a legitimate basis for the adverse employment decision: whether a reasonable jury could conclude, by a preponderance of the evidence, that the unlawful discrimination alleged by the plaintiff was a determinative cause of the challenged action. *Sheridan v. E.I. DuPont DeNemors,* 74 F.3d 1439, 1996 WL 36283, *11 (3d Cir.), *opinion vacated and reh'g granted en banc,* 74 F.3d 1459, 1996 WL 135060 (3d Cir.1996). In setting forth what it believed was a deficiency of *Fuentes,* the court discussed a hypothetical with facts similar to the instant case on this issue. *Id.* at *10. As noted, however, *Sheridan* has been vacated and rehearing has been set before the Third Circuit.

It shall be an unlawful employment practice for an employer to discriminate against any of his employees ... because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter.

42 U.S.C. § 2000e–3(a). Here, Plaintiff contends that her discharge was the result of her complaints to the "labor board."

To establish a prima facie case of retaliatory discharge, a plaintiff must show that: (1) she engaged in a protected activity; (2) she was discharged after or contemporaneous with that activity; and (3) there was a causal connection between the protected activity and her discharge. *Jalil v. Avdel Corp.*, 873 F.2d 701, 708 (3d Cir.1989), *cert. denied*, 493 U.S. 1023, 110 S.Ct. 725, 107 L.Ed.2d 745 (1990) (citation omitted). As with a pretext claim, if the plaintiff succeeds in proving a prima facie case, the burden shifts to the employer to "articulate some legitimate, nondiscriminatory reason" for its actions. *Fuentes*, 32 F.3d at 763. If the defendant carries its "relatively light burden by articulating a legitimate reason for the unfavorable employment decision, the burden of production rebounds to the plaintiff, who must now show by a preponderance of the evidence that the employer's explanation is pretextual (thus meeting the plaintiff's burden of persuasion)." *Id.* (parenthetical in original).

We turn then to application of these standards to the facts of the instant case. There is no dispute that Plaintiff meets elements one and two of her prima facie case since she contacted the PHRC about a claim of gender discrimination, informed Grove of this fact, and was terminated shortly thereafter. Additionally, Plaintiff's suspension and termination within two weeks after Grove became aware of her complaint to the PHRC, and Tom Keller's alleged reaction to her statement that she was going to the "labor board", is sufficient to establish a causal link.

Thus, Grove must "articulate some legitimate, nondiscriminatory reason"

for its actions. *Fuentes*, 32 F.3d at 763. As noted, Grove has advanced a reason for Plaintiff's discharge which, if true, is a legitimate basis: Plaintiff engaged in six acts of disorderly conduct and/or insubordination. At this point the burden returns to Plaintiff to establish "by a preponderance of the evidence that the employer's explanation is pretextual (thus meeting the plaintiff's burden of persuasion)." *Id.* (parenthetical in original). This can be accomplished in one of two ways: (1) presenting evidence that would allow a jury to conclude that Grove's proffered reason was a fabrication; or (2) presenting evidence that would allow a jury to conclude that retaliation was "more likely than not" the true reason for her discharge. *Id.* at 764. We need only address the former.

Grove maintains that Plaintiff has not introduced any evidence that would permit a jury to conclude that the reason advanced for her termination was fabricated. In fact, Grove argues, Plaintiff admits that she committed each of the acts that Grove alleges amounted to insubordination or disorderly conduct. While we recognize that Plaintiff engaged in the acts that Grove contends led to her discharge, a jury might nonetheless find that those acts were not the true reason for Plaintiff's discharge. *See Davis v. Sheraton Society Hill Hotel*, 907 F.Supp. 896, 900 (E.D.Pa.1995) (setting forth a non-exhaustive list of factors which could raise an inference of pretext).

Plaintiff has pointed to examples of other employees who engaged in repeated instances of disorderly conduct but were not disciplined or terminated. Grove does not dispute that employees who engaged in disorderly conduct on numerous occasions were not discharged, but maintains that Plaintiff "cannot point to any employee who, in the face of repeated direct orders, deliberately disrupted the workplace and flaunted the authority of her superiors." [Def.'s Reply Br. at 10]. Notwithstanding Grove's assertion, in light of its treatment of other employees who engaged in misconduct, a reasonable jury might disbelieve Grove's contention that Plaintiff was discharged because of disorderly conduct and/or insubordination.

Moreover, Plaintiff contends that after she informed him that she was going to the labor board, "Tom Keller jumped up and approached me; I felt his hand grabbing my arm. I said 'Don't you touch me.' He was visibly upset. He told me to go to his office." [Pl.'s Decl. at ¶ 116]. If a jury believes that Keller acted in the manner alleged by Plaintiff, it might be warranted in finding that Plaintiff was not discharged for what she *did* on August 1, 1994, as alleged by Grove, but for what she *said* to Tom Keller.

There were additional problems with Plaintiff's discharge. For example, Grove contends that "Roger Hockenberry ... and Tom Keller jointly decided to terminate her, which became effective August 15, 1994", [Def.'s Br. in Supp. of S.J. at 4], although Tom Keller denies that he made the decision. [T. Keller Dep. at 155–56]. Assuming Tom Keller participated in the decision to terminate Plaintiff, a jury could disbelieve Grove's proffered reason based on Keller's alleged reaction to Plaintiff's statement on August 1, 1994; his actions and statements during the July 7, 1994 meeting with Plaintiff and Larry Keller; and, finally, the fact that the person who Plaintiff accused of discrimination and harassment, Larry Keller, was his brother.

In addition, Larry Keller was never interviewed with respect to the incidents that occurred on August 1, 1994. [L. Keller Dep. at 105–08]. This is significant because two of the six instances of misconduct (Plaintiff's refusal to report to the human resources department and her refusal to leave the plant) directly involved him.[11] Further, the jury could believe Plaintiff's assertion that, in response to her complaints about his treatment of her, Larry Keller told her on numerous occasions "not to go over his head" and that to do so "wouldn't be smart." [M. Moore Dep. at 263].

Finally, Grove contends that Plaintiff was insubordinate when she talked to her employees after being told not to by Hockenberry. Plaintiff maintains that she simply told the employees to "keep working", while Hockenberry's version of her statements is different. If the jury believes Plaintiff, it

could also decide that Grove's assertion that her conduct in speaking to the employees amounted to "insubordination" was false.

Because the jury might find that the events on August 1, 1994 were not the true reason for Plaintiff's discharge, Grove's motion for summary judgment on Count IV of the complaint must be denied.

---

11. We deem this fact even more pertinent since the Plaintiff's allegations of gender harassment,

whether meritorious or not, were directed at Larry Keller.