**Karen B. MILLER, Plaintiff,**

**v.**

**William S. COHEN, Secretary of Defense; Togo D. West, Secretary of the Army, Defendants.**

**No. 1:CV–97–0919.**

United States District Court, M.D. Pennsylvania.

July 13, 1998.

390

James J. West, Harrisburg, PA, for Karen B. Miller, plaintiff.

David M. Barasch, Mark Everett Morrison, Kate L. Mershimer, United States Attorney's Office, Harrisburg, PA, Stephen J. Berg, Major, U.S. Army Litigation Center, Arlington, VA, for Defendants.

## MEMORANDUM

RAMBO, Chief Judge.

Before the court is Defendants' motion for summary judgment. The parties have briefed the issues, and the motion is ripe for disposition.[1]

## I. Background

The instant case is an employment discrimination action under the Rehabilitation Act, 29 U.S.C §§ 701–797 ("RHA"). Plaintiff Karen Miller is currently employed and has been employed by the United States Army since October 1975. Defendant William Cohen is the United States Secretary of Defense. Defendant Togo West is the Secretary of the United States Army.

In June 1992, Plaintiff sustained an injury which resulted in her absence from work for no more than eight weeks. She then returned to work with no restrictions. On June 1, 1993, Plaintiff joined her current unit, the Army Recruiting Battalion, as a Management Assistant, Grade Scale 5 ("GS–5"), under the supervision of Captain Dorothy Gregoire. The job description for this position stated, *inter alia*, that the work is primarily performed while sitting but requires occasional periods of "standing, walking, bending, etc." It also stated that the work is performed in an office setting and entails, among other things, requisitioning and dispersing forms and publications.[2] Plaintiff was one of three civilian administrative employees in her

---

1. A party filing a motion for summary judgment is required to file a short and concise statement of undisputed material facts pursuant to Local Rule 56.1. Local Rule 56.1 further provides in relevant part:

 The papers opposing a motion for summary judgment shall include a *separate*, short and concise statement of the material facts, responding to the numbered paragraphs set forth in the [moving party's statement of undisputed material facts].

 (emphasis added). Local Rule 56.1 also provides that any facts set forth in the moving party's statement which are not controverted by the non-moving party's counterstatement will be deemed to be admitted.

 In the instant case, Plaintiff failed to file a separate counterstatement of undisputed material facts. Although her opposition brief includes a factual summary entitled "Counterstatement," she fails to indicate to which of the numbered paragraphs in Defendant's statement of undisputed material facts she is responding and with which there remains a dispute. Notwithstanding Plaintiff's noncompliance with Local Rule 56.1, however, the court will attempt to ascertain and delineate the undisputed facts based on a comparison of her "Counterstatement" to Defendants' statement.

2. The parties dispute the scope and nature of Plaintiff's duties. Defendants allege that the job description stated that she would be responsible for technical administrative/management support services to the organization in forms and publications, requisitioning and dispersing publications, and other duties as assigned. (Defs.' *Statement of Undisputed Material Facts* ¶ 5.) Plaintiff contends that

work area and the only one whose job description included responsibility for requisitioning and dispersing forms and publications.

On March 16, 1994, Plaintiff sustained an injury while stooping to pick up or while lifting a box at work.[3] She was diagnosed as having herniated discs in her lower back. During Plaintiff's absence, all three of the civilian positions were audited on March 17, 1994. As a result, the two Grade Scale 4 ("GS–4") positions in the office were promoted to GS–5. The Civilian Personnel Office also revised Plaintiff's job description to include lifting light items under the "Physical Efforts" section of the form.[4]

On May 12, 1994, Plaintiff returned to work half-days under a "light duty" restriction. On July 5, 1994, she resumed working full days under the same light duty restriction. By that time, Gregoire had retired and had been replaced by Captain Robert Rote. On July 19, 1994, Plaintiff's duty restrictions were modified to: (a) lifting and carrying, on an intermittent basis, no more than twenty-five pounds and on a frequent basis, no more than ten pounds; (b) pushing and pulling no more than thirty pounds; (c) only occasional reaching above the shoulder if the item is less than ten pounds; (d) minimal climbing of stairs; (e) no climbing of ladders; (f) avoiding kneeling and bending at the waist; (g) only minimal stooping and twisting or rotating of side to side with the

body; (h) intermittent walking; and (i) avoiding extremes of heat or cold and excessive humidity. On August 30, 1994, Plaintiff's duty restrictions were changed to intermittent lifting of up to thirty pounds and frequent lifting of up to twenty pounds. The restriction on lifting was reduced again to fifteen pounds on November 3, 1994.

On August 9, 1995, Plaintiff underwent cervical laminectomy surgery. Around the same time, Rote was replaced by Captain Thomas Morel. Approximately ten weeks after her surgery, Plaintiff returned to work half-days with a lifting restriction of no more than ten pounds. According to subsequent letters from her doctor, Plaintiff is still subject to the ten-pound lifting restriction and must also avoid stocking shelves and climbing ladders. These restrictions presumably may be life-long.

When Plaintiff was not absent from work because she was recovering from an injury or surgery, she was often late for work.[5] She also placed personal calls from work. According to Gregoire, Plaintiff was on the phone for over two hours a day even though her job only required her to be on the phone for approximately one-half hour per day. Rote also expressed concern with Plaintiff's use of the phone for personal calls. According to Plaintiff, she intermittently spent up to forty-five minutes on personal calls while under Rote's supervision.

---

during her interview for the Management Assistant position, the classification specialist and Captain Gregoire, informed her that the position posed no physical demands. (Pl.'s Opp'n Br. at 2.) Plaintiff further alleges that several weeks after assuming her new position, Gregoire advised her that part of her duties would include unpacking fifteen to twenty boxes weighing approximately fifty pounds and repacking them for approximately thirty-eight recruiting stations. (*Id.*)

3. Defendants allege that Plaintiff was stooping to pick up a box. (Defs.' Statement of Undisputed Material Facts ¶ 7.) Plaintiff alleges that the injury occurred when she was lifting the box. (Pl.'s Opp'n Br. at 4.)

4. Defendants allege that the audit occurred in accordance with a pre-arranged appointment. (Defs.' Statement of Undisputed Material Facts ¶ 14.) Plaintiff, however, alleges that the Army Recruiting Battalion and the Civilian Personnel Office "secretly" changed her job description in her absence. (Pl.'s Opp'n Br. at 4.)

5. The frequency of Plaintiff's tardiness is disputed: in her deposition, she stated that she was late for work an average of five to ten days a month. (Defs.' Ex. 1 at 231–32.) Captain Morel stated that she was late for work approximately eighty days out of a hundred. (Defs.' Ex. 16 at 47.)

Plaintiff first contacted the Equal Employment Opportunity ("EEO") office regarding an informal complaint on June 23, 1994. Plaintiff filed a formal EEO complaint on October 7, 1994, alleging handicap discrimination for denial of requested job accommodation and reprisals in the following actions: (a) unnecessary counseling on "nitpicking and conflicting situations;" (b) counseling on phone usage and dress; (c) "disclosure and purge of folder on sessions not documented on 7B;"[6] (d) change in job description during injury without 60–day notice; (e) locality pay increase withheld until May 1, 1994; and (f) continuous attempts to put Plaintiff back into the job that caused her injury and failure to accommodate her condition. The Equal Employment Opportunity Commission ("EEOC") has not issued a final agency decision regarding Plaintiff's complaint. On June 18, 1997, Plaintiff filed the instant action for violations of Section 501 and 504 of the RHA, alleging claims for failure to accommodate, hostile work environment, and retaliation for engaging in protected activities.

## II. *Legal Standard*

Federal Rule of Civil Procedure 56 provides that summary judgment is proper when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." A factual dispute is "material" if it might affect the outcome of the suit under the applicable law. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A factual dispute is "genuine" only if there is a sufficient evidentiary basis which would allow a reasonable fact-finder to return a verdict for the non-moving party. *See id.* at 249, 106 S.Ct. 2505. The court must

resolve all doubts as to the existence of a genuine issue of material fact in favor of the non-moving party. *See White v. Westinghouse Elec. Co.,* 862 F.2d 56, 59 (3d Cir.1988).

Once the moving party has shown that there is an absence of evidence to support the claims of the non-moving party, the non-moving party may not simply sit back and rest on the allegations in her complaint; instead, she must "go beyond the pleadings and by [her] own affidavits, or by the depositions, answers to interrogatories, and admissions on file, and designate specific facts showing that there is a genuine issue for trial." *Celotex Corp. v. Catrett,* 477 U.S. 317, 324, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986) (internal quotations omitted). Summary judgment should be granted where a party "fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which that party will bear the burden at trial." *Id.*

## III. *Discussion*

### A. *Existence of a Disability*

The RHA provides that anyone receiving federal funds may not discriminate against an "otherwise qualified individual with a disability." 29 U.S.C. § 794(a) (Supp.1997). In order to make a *prima facie* case of discrimination under the RHA, a plaintiff must prove three elements: (1) she has a disability; (2) she is otherwise qualified to perform the essential functions of the job, with or without reasonable accommodations by the employer; and (3) she was nonetheless terminated or otherwise prevented from performing the job. *Mengine v. Runyon,* 114 F.3d 415, 418 (3d Cir.1997).

The RHA defines an individual with a disability as one who: "(i) has a physical or mental impairment which substantially limits one or more of such per-

---

**6.** The meaning or significance of this challenged action is not contained in the parties' pleadings or their briefs.

son's major life activities; (ii) has a record of such an impairment; or (iii) is regarded as having such an impairment." 29 U.S.C. § 706(8)(B) (Supp.1997). Implementing regulations define "major life activities" as "functions such as caring for oneself, performing manual tasks, seeing, hearing, speaking, breathing, learning, and working." 29 C.F.R. § 1615.103(2). Other major life activities include, but are not limited to, walking, lifting, standing, reaching, and bending. *See* 29 C.F.R. § 1630.2(i) App.[7]

Defendants first argue that Plaintiff is not a handicapped individual entitled to the protections of the RHA. They present two arguments in support of their position: (1) Both injuries suffered by Plaintiff were transitory in nature and did not render her disabled; and (2) Plaintiff's post-surgery rehabilitative condition does not substantially limit one or more of her major life activities.

**1. *Before March 16, 1994***

The parties do not dispute that following Plaintiff's first injury in June 1992, she returned to work without any medical restrictions on her duties. Although Plaintiff argues that she returned to work with a disability, she fails to offer any evidence to support her contention. Thus, the court finds that Plaintiff was not disabled prior to her second injury in March 1994.

**2. *March 16, 1994 to August 9, 1995***

As to Plaintiff's status between March 16, 1994 and August 1995, Defendants correctly assert that the RHA does not apply to transitory, non-chronic impairments. *See McDonald v. Pennsylvania Dept. of Public Welfare*, 62 F.3d 92, 96–96 (3d Cir.1995). Whether Plaintiff's impairment was of limited duration, however, is a genuine issue of material fact.

When Plaintiff returned to work in May 1994, she was under a light duty restriction which was gradually modified with her recovery. A May 24, 1994 letter from Plaintiff's doctor, Keith Zeliger indicates seventy percent relief of Plaintiff's discomfort. (Defs.' Ex. 5.) On June 7, 1994, Zeliger wrote that Plaintiff felt at least ninety percent better than when he first saw her. (Defs.' Ex. 6.) Subsequent letters from Zeliger, dated June 21, July 19, and August 30, 1994, further indicate improvements in Plaintiff's condition and show a progression toward resumption of regular duty. (Defs.' Ex. 7, 8, 9.) On November 9, 1994, Dr. John Montgomery, Medical Director of the Army Health Clinic, again reduced Plaintiff's lifting restriction to fifteen pounds and recommended her fitness for duty. (Pl.'s Ex. M.) The record does not indicate whether Plaintiff remained subject to any medical restrictions prior to her August 1995 surgery. Since a question of material fact exists as to Plaintiff's disabled status between March 16, 1994 and August 9, 1995, the court will not find that the Plaintiff is foreclosed from recovery for the acts which allegedly occurred during that period.

**C. *After August 9, 1995***

While conceding to the permanent nature of Plaintiff's impairment following her August 1995 surgery, Defendants argue that her condition is not a "disability" under the RHA. They claim that Plaintiff is not significantly restricted in the major life activity of working because her ability to perform a class of jobs or a broad range of jobs in various classes is not significantly restricted in comparison to the average person with comparable training, skills, and abilities. Defendants further maintain

---

**7.** Although this non-exhaustive list is contained in regulations implementing the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12101–12213, it elucidates the definition of major life activities under the RHA. The ADA regulation "adopts the definition of the term 'major life activities' found in the regulations implementing section 504 of the Rehabilitation Act." 29 C.F.R. § 1630.2(i). Furthermore, the RHA provides that its substantive standards for liability mirror those under the ADA. *See* 29 U.S.C. § 794(d).

that Plaintiff's inability to lift more than ten pounds does not hamper her ability to perform her particular job, a clerical position which entails nothing more physical than light lifting associated with an office environment involving forms. Defendants also argue that even if Plaintiff cannot perform all of her job duties, she can perform most, if not all, clerical jobs. They point out that in Plaintiff's deposition, she admitted that she is disabled only from the perspective of the requirements of the job she is expected to do and that she could perform her co-workers' jobs.

EEOC regulations provide that whether an individual is substantially limited in a major life activity depends on the following factors:

> (i) The nature and severity of the impairment;
>
> (ii) The duration and expected duration of the impairment; and
>
> (iii) The permanent or long term impact, or the expected permanent or long term impact of or resulting from the impairment.

29 C.F.R. § 1630.2(j)(2). The substantiality of a limitation is also assessed in relation to the range of abilities of the average person in the general population. *Id.* § 1630.2(j).

■ The court notes that the parties' briefs focus on the major life activity of working. Plaintiff, however, offers no evidence of the number and type of jobs from which she is disqualified, the geographical area to which she has reasonable access, and her job expectations and training. *See Byrne v. Board of Educ., School of West Allis–West Milwaukee*, 979 F.2d 560, 564 (7th Cir.1992); *Forrisi v. Bowen*, 794 F.2d 931, 933 (4th Cir.1986); *Jasany v. United States Postal Service*, 755 F.2d 1244, 1249 (6th Cir.1985); *James v. Runyon*, Civ. A. No. 92–2262, 1992 WL 382311, *3 (E.D.Pa. Dec.9, 1992). Furthermore, in her deposi-

tion she stated that she was disabled for the job that her supervisors expected her to do but could perform the job as stated in her job description. (Defs.' Ex. 1 at 93, 242.) She also admitted that she could perform the jobs of her co-workers. (*Id.* at 215–16.) In her brief, she describes herself as a "handicapped individual in a job she can do based on the two job descriptions she has been given ..." (Pl.'s Br. at 16.) Accordingly, no issue of fact exists as to whether Plaintiff is substantially limited in the major life activity of working. *See McKay v. Toyota Motor Mfg.*, 110 F.3d 369, 373–74 (6th Cir.1997) (summary judgment for defendant appropriate where plaintiff only produced evidence that he was excluded from his job rather than a class of jobs); *Wooten v. Farmland Foods*, 58 F.3d 382, 386 (8th Cir.1995) (same) *Bolton v. Scrivner*, 36 F.3d 939, 942–44 (10th Cir.1994) (same).

■ While no issue of fact exists as to whether Plaintiff is substantially limited in the major life activity of working, a triable issue of fact may exist as to whether she is substantially limited in the major life activity of lifting. Courts have generally been reluctant to find individuals with minimal to moderate lifting restrictions to be disabled. For example, the Ninth, Fourth, and Eighth Circuits have held that, as a matter of law, a lifting restriction of twenty-five pounds or more does not render a person disabled. *See Thompson v. Holy Family Hosp.*, 121 F.3d 537, 539–40 (9th Cir.1997); *Williams v. Channel Master Satellite Sys., Inc.*, 101 F.3d 346, 349 (4th Cir.1996); *Aucutt v. Six Flags Over Mid–America, Inc.*, 85 F.3d 1311, 1319 (8th Cir.1996).[8] While a twenty-five pound lifting restriction may fall on the side of the commonplace, the ten-pound lifting restriction to which Plaintiff is subject may be characterized as severe when compared to the lifting abilities of the general popula-

---

8. That these cases involve the ADA does not detract from their persuasive or precedential value. As recognized by the Third Circuit, the RHA provides that its substantive standards for liability are the same as those under the ADA. *See* 29 U.S.C. § 794(d); *see also McDonald v. Pennsylvania Dept. of Welfare*, 62 F.3d 92, 95 (3d Cir.1995).

tion. Accordingly, the court finds that a triable issue of fact remains as to whether Plaintiff has been disabled since her August 1995 surgery.

## B. *Retaliation Claims*

### 1. *Adverse Employment Actions*

■ As noted above, the standards for liability under the ADA and the RHA are identical, see note 8, *supra*. Furthermore, the Third Circuit has espoused the same framework for evaluating retaliation claims under the ADA as those under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e *et seq.* ("Title VII"). *See Krouse v. American Sterilizer Co.,* 126 F.3d 494, 500 (3d Cir.1997). Thus, the court applies the framework for Title VII retaliation claims to the instant RHA retaliation claims. A plaintiff asserting a retaliation claim must show that: (1) she engaged in a protected activity; (2) she suffered an adverse employment action subsequent to or contemporaneous with the protected activity; and (3) there is a causal link between the protected activity and the adverse employment action.

■ An adverse employment action is one that "alters the employee's 'compensation, terms, conditions, or privileges of employment,' deprives him or her of 'employment opportunities,' or 'adversely affect[s] his [or her] status as an employee." *Robinson v. City of Pittsburgh,* 120 F.3d 1286, 1299–1300 (3d Cir.1997) (alterations in original) (quoting 42 U.S.C. § 2000e–2(a)). An action qualifies as an adverse employment action if it impairs the plaintiff in present or future employment situations. *Nelson v. Upsala College,* 51 F.3d 383, 387–88 (3d Cir.1995). For example, the denial of benefits, *Hishon v. King & Spalding,* 467 U.S. 69, 75, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984), or a dramatic downward shift in skill level or job responsibilities, *Dahm v. Flynn,* 60 F.3d 253, 257 (7th Cir.1994), constitutes adverse employment action. Conversely, a transfer of position, *Smart v. Ball State Univ.,* 89 F.3d 437, 441 (7th Cir.1996); negative performance evaluations alone, *id.* at 442; harsh criticism or counseling, *Simmerman v. Hardee's Food Sys. Inc.,* Civ. No. A94–6906, 1996 WL 131948, *14 (E.D.Pa. March 22, 1996); and general allegations of being treated "differently and more harshly," *Moore v. Grove North America, Inc.,* 927 F.Supp. 824, 831 (M.D.Pa.1996) do not qualify as adverse employment actions.

Plaintiff's complaint asserts that the following actions allegedly taken by Defendants constituted adverse employment actions: (1) failures to promote her to the Computer Specialist and Public Affairs Specialist positions in December 1994; and (2) counseling on telephone usage, leave usage, and tardiness for work. (Compl.¶ 111.) In her brief, she asserts that she has been (1) "demeaned by her fellow workers and alienated from her peers under the direction of her supervisors;" (2) placed under video-tape surveillance by one supervisor; (3) followed to the restroom by another, who pressed his ear to the door to listen to her conversation; (4) had her phone calls monitored; (5) cited in writing for being late or early to work; and (6) denied awards and location pay. (Pl.'s Br. at 19.) Additionally, she asserts that her fellow employees have treated her family rudely and insulted them and have made frequent comments about her "faking it" within earshot. (*Id.*) She also states that a supervisor has placed a surveillance mirror on his wall to monitor her daily activities. (*Id.*)

Plaintiff's complaint also alleges that, in retaliation, her locality pay increase was withheld from January 1, 1994 to May 1, 1994. (Compl.¶ 64(b).) As Plaintiff's initial contact with an EEO counselor occurred after the withholding of the locality pay increase, on June 23, 1994, no causal connection exists between her protected activity and the withholding of her locality pay increase. Furthermore, Defendants point out that Plaintiff stated that she believed that "Brigade CPO presumed that as a GS–09 on retained pay, I was not

entitled to locality pay increases." (Defs.' Ex. 18 ¶ 2.) Plaintiff offers no evidence to refute her own admission that she was denied the locality pay increase for a non-retaliatory reason.

 As to the remainder of the allegedly retaliatory actions, the court does not consider counseling on telephone usage, leave usage, and tardiness to amount to adverse employment actions. *See Simmerman,* 1996 WL 131948 at *14. Nor do the alleged monitoring, surveillance, or opprobrious treatment by her co-workers amount to adverse employment actions giving rise to claims of retaliation.[9] Rather, these alleged actions are addressed by her hostile work environment claims. Denial of promotions, however, does constitute adverse employment actions and as such, may provide the basis for retaliation claims under the RHA.

### 2. *Exhaustion of Administrative Remedies*

Defendants next argue that Plaintiff failed to exhaust her administrative remedies with respect to the denied promotions. They maintain that although Plaintiff knew she had been denied the Computer Specialist and Public Affairs Specialist positions in December 1994, she did not bring claims of retaliation based on the denied promotions before an EEO counselor. Plaintiff, however, argues that the exhaustion requirement is excepted by the doctrines of equitable tolling and continuing violation.

#### a. *Equitable Tolling*

 A plaintiff must exhaust Title VII administrative remedies before bringing suit under either Sections 501 or 504 of the RHA. *See Spence v. Straw,* 54 F.3d 196, 201 (3d Cir.1995). Administrative procedures regarding complaints of discrimination by federal employees are set

forth at 29 C.F.R. §§ 1614.10–1614.110 which provide, in relevant part:

(a) Aggrieved persons who believe they have been discriminated. against on the basis of race, color, religion, sex, national origin, age or handicap must consult a Counselor prior to filing a complaint in order to try to informally resolve the matter.

(1) An aggrieved person must initiate contact with a Counselor within 45 days of the date of the matter alleged to be discriminatory or, in the case of personnel action, within 45 days of the effective date of the action.

29 C.F.R. § 1614.105(a). The Supreme Court has held that "filing a timely charge of discrimination with the EEOC is not a jurisdictional prerequisite to suit in federal court, but a requirement that, like a statute of limitations, is subject to waiver, estoppel, and equitable tolling." *Zipes v. Trans World Airlines, Inc.,* 455 U.S. 385, 393, 102 S.Ct. 1127, 71 L.Ed.2d 234 (1982). This interpretation "honors the remedial purpose of the legislation as a whole without negating the particular purpose of the filing requirement, to give prompt notice to the employer." *Id.* at 397, 102 S.Ct. 1127.

The Third Circuit has instructed that:

there are three principal, though not exclusive, situations in which equitable tolling may be appropriate: (1) where the defendant has actively misled the plaintiff respecting the plaintiff's cause of action; (2) where the plaintiff in some extraordinary way has been prevented from asserting his or her rights; or (3) where the plaintiff has timely asserted his or her rights mistakenly in the wrong forum.

*Oshiver v. Levin, Fishbein, Sedran & Berman,* 38 F.3d 1380, 1387 (3d Cir.1994); *see also* 29 C.F.R. § 1614.105(a)(2). In the

---

9. The court does not consider whether, as Plaintiff asserts, these conditions were tantamount to constructive discharge. Plaintiff did not assert a constructive discharge claim in her complaint nor does she address the elements of a constructive discharge claim in her brief.

instant case, the court's inquiry focuses on the second of the three situations described in *Oshiver*. By affidavit, Plaintiff avers that after being denied the promotions sought she contacted the EEO Manager to inform him that she wanted counseling as to those matters. (Pl.'s Ex. A ¶ 15.) He told her to present the matters to the EEO investigator who would be coming in March 1995. (*Id.*) The EEO investigator, in turn, told her that the denied promotions were not covered by her hostile work environment claims which were the only matters he was directed to investigate. (*Id.*)

As Defendants point out, however, even if Plaintiff was misinformed about the propriety of bringing the denials of promotions to the EEO investigator's attention, she did not attempt to raise them again. Plaintiff did not contact an EEO counselor following her March 1995 conversation with the EEO investigator. When she did contact an EEO counselor again on September 27, 1996, she did not raise the denied promotions as a basis for retaliation claims. (Defs.' Ex. 21.) Plaintiff also did not raise them in her formal complaint of February 7, 1997 or in her subsequent EEO complaints. (Defs.' Ex. 20; Pl.'s Ex. K.) Even though Plaintiff's failure to raise the denied promotions prior to March 1995 may be excused by the misinformation provided by her EEO counselor, she offers no explanation for her failure to subsequently raise those matters. Her failure to exhaust her administrative remedies, therefore, is not subject to equitable tolling.

### b. *Continuing Violation*

Plaintiff also argues that her failure to exhaust administrative remedies is excepted by the doctrine of continuing violation.[10] She maintains that the denied promotions are part of a continuing course of retaliation.

The continuing violation theory is an equitable exception to the administrative exhaustion requirement. *See West v. Philadelphia Elec. Co.*, 45 F.3d 744, 754 (3d Cir.1995). Under this theory, a plaintiff may pursue a claim for discriminatory conduct that is time-barred if she can demonstrate that the act is part of an ongoing practice or pattern of discrimination by the defendant. *See id.* To establish that a claim falls within the continuing violation theory, the plaintiff must demonstrate that: (1) at least one discriminatory act occurred within the limitations period; and (2) the discriminatory conduct is more than the occurrence of isolated or sporadic acts of intentional discrimination; that is, the acts demonstrate a continuing pattern of discrimination. *See id.* at 754–55.

In the instant case, Plaintiff has shown the existence of at least one discriminatory act within the filing period. However, she fails to establish that the denied promotions were part of a continuing pattern of discrimination.

The Third Circuit has advocated a non-exhaustive list of factors to discern the existence of a continuing pattern of discrimination:

'The first is subject matter. Do the alleged acts involve the same type of discrimination, tending to connect them to a continuing violation? The second is frequency. Are the alleged acts recurring ... or more in the nature of an isolated work assignment or employment decision? The third factor, perhaps of most importance, is the degree of permanence. Does the act have the degree of permanence which should trigger an employee's awareness of and duty to assert his or her rights, or which should indicate to the employee that the

---

**10.** Plaintiff also argues that the denied promotions have great evidentiary value and would be admissible to show motive, plan, scheme, intent, and the pervasiveness of the scheme. Given that the issue before the court is not the admissibility of such evidence but rather, whether a retaliation claim based on the denied promotions is time-barred, the court does not address this argument in the instant memorandum.

continued existence of the adverse consequences of the act is to be expected without being dependent on a continuing intent to discriminate?'

*Rush v. Scott Specialty Gases, Inc.*, 113 F.3d 476, 482 (3d Cir.1997) (quoting *Berry v. Board of Supervisors of Louisiana State Univ.*, 715 F.2d 971, 981 (5th Cir.1983)).

Plaintiff does not dispute that she knew in December 1994 that her applications for the Computer Specialist and Public Affairs Specialist positions had been denied. The denials had sufficient degrees of permanence to trigger Plaintiff's awareness of and duty to assert her rights. Moreover, Plaintiff does not assert that she was unaware of the allegedly discriminatory basis for the denied promotions until some later date; nor does she assert that she was only able to understand the discriminatory nature of the conduct after several discriminatory acts were committed against her. To the contrary, she asserts that she contacted her EEO counselor shortly after the denied promotions to seek counseling. (Pl.'s Ex. A ¶ 15.)

█ Additionally, neither the failure to accommodate claims nor the hostile work environment claims are sufficiently related to her retaliation claim to constitute a continuing violation. The failure to accommodate claims are based, in large part, on the lifting duties imposed upon her and refusal to alter her job description or work schedule. The hostile work environment claims in her EEO complaint are based on her lifting duties and the treatment by her superiors and co-workers. By contrast, the instant retaliation claims address a wholly different type of conduct—failure to promote. The denied promotions are not sufficiently related to Plaintiff's failure to accommodate and hostile work environment claims to be regarded as a continuing violation. The court is mindful of the Third Circuit's caution to be "circumspect in relating discrete incidents to each other," *Rush*, 113 F.3d at 485, and finds that Plaintiff's retaliation claims are not subject to the continuing violation doctrine. *See*

*Saylor v. Ridge*, 989 F.Supp. 680, 687 (E.D.Pa.1998) (no continuing violation where plaintiff knew or should have known of denials of his requests for promotion and out-of-class pay, retroactivity of a promotion, accommodation, and compensation for work performed at home); *Hopson v. Dollar Bank*, 994 F.Supp. 332, 337 (W.D.Pa.1997) (continuing violation theory inapplicable where failure to promote plaintiff was permanent and discriminatory acts were infrequent).

In light of the court's conclusions that only the denied promotions give rise to retaliation claims, that Plaintiff failed to exhaust her administrative remedies with respect to the denials, and that no exceptions apply to the exhaustion requirement, the court will grant summary judgment in favor of Defendants as to Plaintiff's retaliation claims.

### C. *Hostile Work Environment Claims*

█ Although the availability of a hostile work environment claim under the RHA has not been addressed by the Third Circuit, other courts in this circuit have read the RHA to support such a claim. *See Easley v. West*, Civ. A. No. 93–6751, 1994 WL 702904, *7 (E.D.Pa. Dec.13, 1994); *Taylor v. Garrett*, 820 F.Supp. 933, 939 n. 11 (E.D.Pa.1993). Courts have also permitted hostile work environment claims under the ADA. *See, e.g., Presta v. Southeastern Pennsylvania Transp. Auth.*, Civ. A. No. 97–2238, 1998 WL 310735, *13 (E.D.Pa. June 11, 1998). Thus, the court will permit Plaintiff to pursue hostile work environment claims under the RHA.

Plaintiff alleges hostile work environment claims on the basis of the following acts by Army personnel: (1) revising her job description in her absence after her March 1994 injury to include lifting duties while promoting other lower-classified women to higher-graded, non-lifting positions; (2) failing to promote her to available positions for which she was qualified; (3) providing unnecessary and disparate

counseling for tardiness and phone usage; (4) erecting a mirror in the office to monitor her activities; (5) withholding a locality pay increase; (6) refusing to restore continuation of pay and annual and sick leave; (7) repeatedly requesting medical documentation of the requested accommodation even though her superiors already had complete and adequate documentation; and (8) encouraging her co-workers' hostility towards her. (Compl.¶¶ 103, 107.) She also alleges that Morel made her stock shelves with two other women in July 1996, "resulting in further manifestations of physical injury and emotional trauma." (*Id.* ¶ 78.) She alleges that she was accused of improperly removing employee counseling records even though she called attention to the fact that the Army Battalion Management had previously permitted others to remove the files. (*Id.* ¶ 87(e).) She also asserts that Morel interfered with her medical care by objecting to her use of the microwave oven to heat a Tupperware container containing a gel pad for her neck. (*Id.* ¶ 87(f).)

Defendants argue that Plaintiff fails to show that she was subjected to a hostile work environment and that she failed to exhaust her administrative remedies as to many of the allegedly discriminatory acts. The court will address these arguments *seriatim.*

### 1. *Existence of a Hostile Work Environment*

 "In order to establish a claim for employment discrimination due to an intimidating or offensive work environment, a plaintiff must establish, by the totality of the circumstances, the existence of a hostile work or abusive *environment* which is severe enough to affect the psychological stability of a minority employee." *Aman v. Cort Furniture Rental Corp.,* 85 F.3d 1074, 1081 (3d Cir.1996) (internal quotations omitted). The totality of the circumstances may include: (1) the frequency of the discriminatory conduct; (2) its severity; (3) whether the conduct is physically threatening or humiliating, or a mere offensive utterance; and (4) whether it interferes with an employee's work performance. *See Harris v. Forklift Sys., Inc.,* 510 U.S. 17, 23, 114 S.Ct. 367, 126 L.Ed.2d 295 (1993). To successfully maintain a hostile work environment claim, the plaintiff must show: (1) she suffered intentional discrimination because of her membership in a protected class; (2) the discrimination was pervasive and regular; (3) the discrimination detrimentally affected her; (4) the discrimination would have detrimentally affected a reasonable person of the same protected class in that position; and (5) the existence of *respondeat superior* liability. *See Andrews v. City of Philadelphia,* 895 F.2d 1469, 1482 (3d Cir.1990).

Defendants argue that Plaintiff fails to show that she suffered intentional discrimination because of her disability or that the conduct she describes was physically threatening or humiliating. The court disagrees.

 Plaintiff has raised a genuine issue of material fact as to whether she was subjected to intentional discrimination as a result of her disability and whether the challenged conduct was physically threatening or humiliating. Her affidavit states that on numerous instances her co-workers loudly commented that she was "faking it," that her superiors encouraged her co-workers to report her personal calls, and that on one occasion, Morel followed her to the ladies room and pressed his ear to the door to listen to the conversation. (Pl.'s Ex. A ¶ 5.) She asserts that her superiors tried to make her lift boxes weighing an average of 39 pounds and up to 60 pounds. (*Id.* ¶ 11.) She also states that she was counseled for tardiness while her co-workers were not, even though her tardiness was attributable to her condition and the medication for treating it. (*Id.* ¶ 22.) Furthermore, she was counseled for being early and denied flex-time for her health reasons while other employees were given flex-time. (*Id.*) Plaintiff asserts that her superiors conducted an investigation to de-

termine her usage of the phone for personal calls and when the results revealed that a co-worker was placing more personal calls than Plaintiff, Rote ended the investigation as being inconclusive. (*Id.* ¶ 23.) She also alleges that Morel had a mirror mounted on his wall to solely monitor Plaintiff's activities. (Compl.¶ 80.)

Defendants argue that Plaintiff may not rely merely on her own affidavit that her supervisors' conduct was motivated by discriminatory animus. The Third Circuit, however, has stated that "[t]here is simply no rule of law that provides that a discrimination plaintiff may not testify in his or her own behalf, or that such testimony, standing alone, can never make out a case of discrimination that will survive a motion for summary judgment." *Jackson v. University of Pittsburgh,* 826 F.2d 230, 236 (3d Cir.1987).

> In today's climate of public opinion, blatant acts of discrimination—the true "smoking guns" can easily be identified, quickly condemned and often rectified in the particular settings in which they occur. Much of the discrimination that remains resists legal attack ·exactly because it is so difficult to prove. Discrimination victims often come to the legal process without witnesses and with little direct evidence indicating the precise nature of the wrongs they have suffered. That is one of the reasons why our legal system permits discrimination plaintiffs to prove their cases by direct or *circumstantial* evidence.

*Id.*(internal quotations and alterations omitted). In the instant case, the record contains evidence from which a jury could infer that Plaintiff was subjected to intentional discrimination as a result of her disability.

### 2. *Exhaustion of Administrative Remedies*

Defendants next argue that Plaintiff has failed to exhaust her administrative remedies with respect to the majority of her allegations. They assert that the only acts

as to which she has exhausted her administrative remedies are the modification of her job description to include light lifting, promotion of co-workers to higher-graded non-lifting positions, counseling for tardiness and phone usage, and withholding of locality pay.

The court previously concluded, III. B.2.b *supra,* that Plaintiff failed to exhaust her administrative remedies as to the denied promotions to the Computer Specialist and Public Affairs Specialist positions and that the denials were not subject to the continuing violation exception. Accordingly, the court will grant summary judgment in favor of Defendant as to the hostile work environment claims which are based on the failures to promote.

With respect to Plaintiff's remaining allegations, the court finds that Plaintiff has alleged sufficient facts to support application of the continuing violation theory. Plaintiff has shown that at least one of the challenged acts occurred within the limitations period and that the acts may have been part of a continuing pattern of discrimination. The acts are allegedly similar in nature—animosity and unfavorable treatment based on Plaintiff's disability—and have allegedly been ongoing. Furthermore, in contrast to the denied promotions, none of the other acts represented a discrete event with permanent effects so as to trigger Plaintiff's duty to assert her rights arising from the act. *See West,* 45 F.3d at 755–56. Accordingly, the court will deny Defendants' motion for summary judgment as to the remainder of Plaintiff's hostile work environment claims.

### IV. *Conclusion*

In accordance with the foregoing discussion, the court will grant in part and deny in part Defendants' motion for summary judgment. The court will grant summary judgment in favor of Defendants as to all claims based on acts occurring before March 16, 1994, the date of Plaintiff's second injury. The court will also grant sum-

mary judgment in favor of Defendants as to Plaintiff's retaliation claims and as to her hostile work environment claims based on the failures to promote her to the Computer Specialist and Public Affairs Specialist positions. The court will deny Defendants' motion for summary judgment as to the remainder of Plaintiff's failure to accommodate and hostile work environment claims. An appropriate order will follow.

### ORDER

In accordance with the accompanying memorandum of law, **IT IS HEREBY ORDERED THAT** Defendants' motion for summary judgment is **GRANTED IN PART** and **DENIED IN PART** as follows:

(1) Summary judgment is granted in favor of Defendants as to:

(a) all claims based on acts or incidents which occurred before March 16, 1994;

(b) all retaliation claims; and

(c) the hostile work environment claims based on the denials of the Computer Specialist and Public Affairs Specialist positions.

(2) Defendants' motion for summary judgment is denied in all other respects.